NAPOLI BERN RIPKA SHKOLNIK, LLP
Joseph P. Napoli (JP9195)
Attorneys for Plaintiff
350 Fifth Avenue, Suite 7413
New York, New York 10022
(212) 267-3700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FELICITA MELENDEZ,

                                          CIVIL NO.: 12-CV-8846 (PKC)

             Plaintiff,

     vs.

GERARDO RODRIGUEZ, VOLPE DEDICATED,
INC., and RITE AID HEADQUARTERS CORP.,

             Defendants.

----------------------------------------------------------------X

PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HER MOTION IN LIMINE

*Of Counsel*
  Joseph P. Napoli

Napoli Bern Ripka Shkolnik, LLP
*Attorneys for Plaintiff*
350 Fifth Avenue, Suite 7413
New York, New York  10118
(212) 267-3700

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

SUMMARY OF ARGUMENT .......................................................................................... 1

STATEMENT OF THE CASE........................................................................................... 2

    A.    Factual Background ........................................................................................ 2

    B.    Procedural History ......................................................................................... 2

    C.    Summary of Challenged Testimony ............................................................... 3

ARGUMENT ...................................................................................................................... 5

    THE PROFFERED TESTIMONY FAILS TO MEET THE REQUISITE STANDARD FOR THE ADMISSION OF EXPERT COMMENT AT TRIAL........................................................................................................................ 5

    A.    Galbreath Is Unqualified To Render An Expert Opinion On Any Fact At Issue In This Matter. ................................................................................. 6

        1.    In The Last Sixteen Years, Galbreath Has Not Once Been Asked To Render An Opinion Based On The Factual Evidence Left After A Commercial Motor Vehicle Accident. ..................................................... 6

        2.    Galbreath Has No Formal Education In The Subject Matter Of His Opinions........................................................................................... 7

        3.    Defendants Cannot Marshal Sufficient Proof To Meet Their Burden Of Showing Galbreath Is A Qualified Expert. ............................... 9

    B.    GALBREATH'S OPINIONS ARE AS UNRELIABLE AS HIS QUALIFICATIONS .......................................................................................... 9

        1.    An Expert Who Does Not Adhere To His Own Methodology Cannot Produce Reliable Opinions ......................................................... 9

        2.    Galbreath Limited The Foundation Of His Opinions To The Self-Serving Evidence Proffered By Defendants, Rather Than Conducting An Independent Review Of All Evidence Available. ........... 10

    C.    ALL FIVE OF MR. GALBREATH'S LEGAL OPINIONS ARE IRRELEVANT USURPATIONS OF THE ROLES OF THE COURT AND JURY........................................................................................................ 12

        1.    Mr. Galbreath's "Opinions" Are Legal Conclusions Far Exceeding The Permissible Scope Of Expert Opinion Testimony............................. 12

    D.    MR. GALBREATH'S LEGAL OPINIONS ARE CHARACTERIZED BY MULTIPLE IRRELEVANT ELEMENTS. ................................................. 14

E.      PRECLUSION OF ALL OF GALBREATH'S LEGAL OPINIONS IS
        WARRANTED UNDER F.R.E. 403 TO AVOID PREJUDICE AND
        WASTE OF COURT RESOURCES. .................................................................. 15

        1.      Rule 403 Permits The Trial Court To Control Improper Expert
                Opinion By Precluding The Testimony Of Minimally Probative,
                Highly Prejudicial Expert Witnesses. ....................................................... 15

        2.      For All The Reasons Previously Discussed, Galbreath's Proffered
                Legal Opinions Are Minimally Probative................................................... 15

        3.      The Proffered Legal Opinions Are Highly Prejudicial, In That
                They Invite The Jury To Decide Critical Issues Of Fact On A
                Completely Improper Basis. ...................................................................... 16

        4.      Ample Proof Before The Court Suggests That Allowing Galbreath
                To Testify Would Merely Present Evidence That Is Readily
                Available From Less Problematic Sources. ............................................... 18

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Christman v. Skinner*,
  468 F.2d 723 (2d. Cir. 1972) .............................................................. 18

*Cisneros v. Cities Service Oil Co.*,
  334 F.2d 232 (2d. Cir. 1964) .............................................................. 18

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ................................................................... 5, 15

*FAA v. Landy*,
  705 F.2d 624 (2d Cir. 1983) .............................................................. 12

*Floyd v. City of New York*,
  898 F.Supp.2d 626 (S.D.N.Y. 2012) ...................................................... 12

*In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*,
  37 F.3d 804 (2d. Cir. 1994) .............................................................. 18

*In re FEMA Trailer Formaldehyde Products Liability Litigation*,
  2009 WL 2169224 (E.D. La. 2009) ........................................................ 18

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ...................................................................... 6

*Lamar v. Micou*,
  114 U.S. 218 (1885) ..................................................................... 18

*Lilly v. Grand Trunk Western Co.*,
  317 U.S. 481 (1943) ..................................................................... 18

*Marx & Co. v. Diners' Club, Inc.*,
  550 F.2d 505 (2d. Cir), *cert. denied*, 434 U.S. 861 (1977) .................... 12, 16, 17

*Price v. Fox Entertainment Group*,
  499 F.Supp.2d 382 (S.D.N.Y. 2007) ....................................................... 17

*Romanelli v. Long Island R. Co.*,
  898 F.Supp.2d 626 (S.D.N.Y. 2012) ...................................................... 12

*Salem v. U.S. Lines Co.*,
  370 U.S. 31 (1962) ...................................................................... 18

*U.S. v. Bilzerian*,
  926 F.2d 1285 (2d. Cir. 1991) ........................................................ 12, 13

*U.S. v. Scop*,
  846 F.2d 135 (2d Cir. 1988), *aff'd on reh'g*, 856 F.2d 5 (2d Cir. 1988) ...... 12, 13, 16

*Zachery v. Wheeler*,
  511 F.Supp. 591 (E.D. Tenn. 1981) ...................................................... 18

## STATUTES

Fed R. Evid. 401 ................................................................................................................... 14

Fed R. Evid. 403 ............................................................................................................... 15, 16

Fed. R. Evid. 104(a) ............................................................................................................... 5

Fed. R. Evid. 201 ................................................................................................................. 18

Fed. R. Evid. 702 ......................................................................................................... 5, 13, 15

Fed. R. Evid. 704 ............................................................................................................. 12, 13

## OTHER AUTHORITIES

Advisory Committee's Note, Fed R. Evid. 704 ............................................................. 12, 13, 16

Advisory Committee's Note, Fed. R. Evid. 401 ..................................................................... 14

## PRELIMINARY STATEMENT

Plaintiff, by and through her attorneys Napoli Bern Ripka Shkolnik, hereby moves this Court for an Order pursuant to Federal Rules of Evidence 104(a), 401, 403, 702, 703, and 704 to preclude or substantially limit the testimony and opinions of Mr. Kevin Galbreath, a purported expert in "Transportation Safety," proffered by Defendant RITE AID HEADQUARTERS CORP. ("Rite Aid").

## SUMMARY OF ARGUMENT

Based on Mr. Galbreath's deposition testimony and the opinions expressed within the three pages that comprise his entire report, Plaintiff contends that Galbreath, who lacks education and possesses minimal training pertinent to the subject matter of his testimony, has not investigated an accident of the type at issue in this matter for at least 15 years; he has never been qualified as an expert by any trial court and is, therefore, unqualified to give an opinion in this case; to the extent that the field in which Mr. Galbreath purports to be an expert has generally accepted principles and methods, Mr. Galbreath has failed to use and/or reliably apply such principles and/or methods because he relied solely upon the statements of the Defendants, their agents and defense counsel to ascertain the facts of the case rather than upon his own investigation and review of the evidence. Plaintiff further contends that of Mr. Galbreath's six stated opinions, five assert legal conclusions affirming the defendants' compliance with the regulations applicable to the Plaintiff's claims herein. Accordingly, those opinions impermissibly usurp the functions of the triers of fact and law. Moreover, this Court will find that all of Galbreath's purported expert opinions are irrelevant; that the testimony expected from Galbreath would pose risks of unfair prejudice and present needlessly cumulative evidence, the prejudice of which will substantially outweigh its minimal probative value to the jury. This

Memorandum of Law and attached supporting exhibits are respectfully submitted in support of Plaintiff's motion.

## STATEMENT OF THE CASE
### A. Factual Background

This suit arises from an incident that occurred on October 24, 2012, in which a commercial motor vehicle struck and dragged a lawful pedestrian, the Plaintiff, FELICITA MELENDEZ, causing her to suffer catastrophic and permanent physical injuries. The commercial motor vehicle in question was an eighteen-wheeled tractor-trailer. It was controlled and operated by defendants GERARDO RODRIGUEZ and VOLPE DEDICATED, INC. (hereinafter "Rodriguez" and "Volpe," respectively, and collectively the "Volpe Defendants"). The accident happened as she traversed White Plains Road in the marked crosswalk near the northern border of that roadway's intersection with Story Avenue in the Bronx, New York.

### B. Procedural History

Plaintiff commenced this action in the Supreme Court of the State of New York for the County of Bronx, seeking recovery for the damages she suffered in the accident. Plaintiff's Verified Complaint alleged that the Volpe Defendants were negligent in causing the accident through, among other things, "failing to comply with the Statutes and Ordinances pertaining to vehicular traffic on the highways of New York." Plaintiff further alleges that Volpe was negligent in hiring Mr. Rodriguez and subsequently entrusting him with the tractor-trailer, in addition to "violating those statutes, ordinances, rules and regulations in such cases made and provided, of which this Court will take Judicial Notice at the time of the trial of this action." Plainitff moreover seeks an award of punitive damages against Volpe upon proof of the additional allegation, also in her Complaint, that Volpe was grossly negligent in hiring Mr. Rodriguez and allowing him to operate the tractor-trailer. The Volpe Defendants removed the

action to the Southern District of New York, where it was consolidated with a related action against Rite Aid, which leased the involved trailer and had contracted with Volpe to obtain delivery services.

Mr. Galbreath was retained as a liability expert by Rite-Aid through its counsel, Raven & Kolbe, LLP, in July, 2013. Deposition Transcript of Kenneth Galbreath ("Galbreath Tr."), Exhibit "4" to Napoli Declaration at p 18:18-22. Rite-Aid served Mr. Galbreath's report on August 9, 2013, and Plaintiff took his deposition on August 28, 2013. This motion followed.

### C. Summary of Challenged Testimony

Mr. Galbreath's report posits no less than six opinions, each of which the Defendants allege are pertinent to questions of liability for the subject accident. Plaintiffs dispute the existence of any proffered evidentiary basis permitting the admission of Mr. Galbreath's opinions, on their own or through his testimony at the trial of this action. His opinions can be organized into two mutually distinct groups on the basis of the subject matter they address. The first five opinions expressed in the report (hereinafter referred to collectively as the "legal opinions") are presumably offered to rebut Plaintiff's allegations that Volpe and Rodriguez's actions violated applicable Federal and State laws and regulations. They are summarized, in pertinent part, below:

1. Volpe was not required to train its drivers beyond the Federal Motor Carrier Safety Regulations (hereinafter "FMCSR"), and all training and safety meetings for which Mr. Galbreath reviewed documentation were "above and beyond any regulatory requirements;"

2. Gerardo Rodriguez had a current medical certificate when hired by Volpe, but Volpe required him to obtain a new certificate at the time of his hiring, thereby going "above and beyond the requirements" of the FMCSR to ensure he was medically qualified;

3.     Volpe has an excellent record with the Federal Motor Carrier Safety Administration and is in compliance with all USDOT rules and regulations;

4.     There are no regulations pertaining to post-accident investigations by a motor carrier, Volpe's post-accident documentation "is above and beyond" the FMCSR requirements, and their practices are in line with those of several motor carriers Galbreath has observed over the years;

5.     Rodriguez's deposition testimony as to the procedures he claims he followed at the time of the accident "falls in line" with Commercial Drivers' Manuals issued by the state regulatory authorities of Pennsylvania, New Jersey and New York, and the National Safety Council's text, "Defensive Driving for the Professional Truck Driver."

Mr. Galbreath's sixth and final opinion (hereinafter referred to as the "audibility opinion") holds that Mrs. Melendez should have been able to hear the Volpe Defendants' tractor-trailer prior to being run over.  Notably, Mr. Galbreath has offered no credentials to support his apparent claim that he can offer an expert opinion on the plaintiff's aural faculties, nor any evidence to support his apparent claim that he is able to make assumptions or offer admissible and credible evidence about the ambient sound and environmental effects then attending at the time and place of the subject accident.

# ARGUMENT

## THE PROFFERED TESTIMONY FAILS TO MEET THE REQUISITE STANDARD FOR THE ADMISSION OF EXPERT COMMENT AT TRIAL.

Fed. R. Evid. 702 provides the standards which control the admissibility of all expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993). Trial courts make all preliminary determinations on matters of admissibility. Fed. R. Evid. 104(a). As such, they must perform a gatekeeping role in ensuring that expert testimony presented at trial pursuant is both reliable and relevant. *Daubert*, 509 U.S. at 590-91. A party seeking to offer testimony under Rule 702 bears the burden of demonstrating that: (1) the proffered expert witness is qualified by knowledge, skill, experience, training, or education; (2) his testimony is based on sufficient facts or data; (3) is the product of reliable principles and methods; and (4) the proposed expert has reliably applied those principles and methods to the facts of the case. Fed. R. Evid. 702. Notwithstanding the above criteria, the offering party must also establish that the testimony would assist the trier of fact to understand the evidence or to determine a fact in issue to establish the relevance of the testimony offered under Rule 702. *See Daubert*, 509 U.S. at 591 (requirement that testimony assist the trier of fact goes primarily to relevance).

A party that seeks the admission of expert testimony must establish each of the above elements by a preponderance of all the proof available to the trial court, regardless of whether that proof would be admissible in evidence during the trial itself. Fed R. Evid. 104(a). Accordingly, if the proponent of expert testimony fails to offer evidence satisfying its preliminary burden as to any one of the above criteria, the testimony must not be admitted. Because the potential subjects of expert testimony are so numerous and varied that the use of a finite set of criteria in a court's exercise of its gatekeeping function is not practical or wise, trial

courts have wide latitude in determining how to arrive at a decision regarding whether a

proffering party has established the reliability and relevance of the proposed expert testimony.

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-152 (1999).  However, regardless of the

subject of expert testimony, the trial court must ensure that the proffered expert has arrived at his

opinions through the exercise of "the same level of intellectual rigor that characterizes the

practice of an expert in the relevant field."  *Id.* at 152.

### A. Galbreath Is Unqualified To Render An Expert Opinion On Any Fact At Issue In This Matter.

#### 1. In The Last Sixteen Years, Galbreath Has Not Once Been Asked To Render An Opinion Based On The Factual Evidence Left After A Commercial Motor Vehicle Accident.

Mr. Galbreath is not qualified by experience, knowledge, or skill acquired through his

professional activities to render a retrospective opinion on the actions of the Volpe Defendants in

this case.  A review of his *Curriculum Vitae* (annexed as Exhibit "2" to the Napoli Declaration)

reveals he has been self-employed as a "Transportation Safety Consultant" for the last ten years,

having been employed in a similar capacity by Great West Casualty Company for five years

prior to starting his business.[1]  His work during that time has entailed direct involvement with

trucking companies and motor carriers to improve their business practices and lower their risks.

In other words, for the last fifteen years, Mr. Galbreath has been in the business of crafting

guidelines for future conduct by his clients' transportation employees/departments.  Specifically,

he is engaged in observing, sometimes participating, in the then-present conduct of a company's

operations before providing advisory opinions on its future operations.  Here, by contrast, all of

Mr. Galbreath's work in this case involved crafting a *retrospective* opinion – reviewing

testimony and documents in total isolation from the defendants' operations in order to determine

---

[1] In addition, it should be noted that the entirety of Mr. Galbreath's work experience has occurred in the Southern United States, while the accident in this case took place in Bronx County, New York.

what happened prior to and during the subject accident.  As such, the totality of Mr. Galbreath's work experience for the last sixteen years evinces a clear and, plaintiff contends, a critical dissonance with the work defendants have asked him to perform in this case.

Incredibly, defendants are proffering Mr. Galbreath as an expert even though his only professional experience investigating accidents is limited to the years between 1992 and 1997, *more than sixteen years removed from the anticipated time of trial, and comprising less than a quarter of his experience working in the field of transportation safety*.  Given the foregoing, it is not surprising that Mr. Galbreath has never been qualified as an expert by any trial court in any jurisdiction, State or Federal, in the United States.[2]  Although he has provided deposition testimony in other matters, that deposition testimony further reveals that none of the four matters in which he has been deposed as an expert since 2009 involved a motor vehicle accident in which allegations of negligence and legal violations were at issue.  *See* Galbreath Tr., Exhibit "4" at p. 21:24 through p. 27:20.

### 2.  Galbreath Has No Formal Education In The Subject Matter Of His Opinions.

Mr. Galbreath is utterly unqualified to render his audibility opinion, having had absolutely no education, training, experience, or skill in evaluating acoustics or ambient environmental sound.  Galbreath Tr., Exhibit "4" at p. 39:14-16.  Any knowledge he may possess as to the noise generated by the type of truck involved in the accident is no different from that held by any layperson that traverses the sidewalks of any modern city on a semi-regular basis.  Nor has he any training as an audiologist and certainly has not tested Ms. Melendez to evaluate

---

[2] The fact that the proffering defendants apparently could not find a more qualified or experienced courtroom expert willing to testify in this area should also be instructive as to his qualifications, especially considering the fact that the defendants were willing to pay their expert at least $6,000 prior to his deposition.  *See* Galbreath Tr., Exhibit "4" at p. 131:2-6.

her hearing. He is plainly lacking in the requisite training, credentials or experience necessary to render an "expert" opinion on whether Mrs. Melendez should have been able to hear the tractor-trailer's engine as it was bearing down on her in ongoing traffic.

Furthermore, Galbreath is attempting to offer opinions on regulatory compliance, yet Galbreath has no educational background that qualifies him to testify to legal opinions at trial. His highest level of formal education is a Bachelor's degree in Fine Arts with a major in Commercial Art. *See* Galbreath C.V., Exhibit "2", *see also* Galbreath Tr., Exhibit "4", at p. 7:3-5. Accordingly, he is not qualified by education to render the legal opinions proffered by the Defendants. Indeed, doing so is not a proper area of expert comment; once the parties offer credible and admissible evidence as to the defendants' practices and conduct, as well as the relevant regulations, it is this Court's exclusive province to apply the relevant law and instruct the jury accordingly.

Mr. Galbreath's primary sources of training on the questions of regulatory compliance in the commercial transportation industry were courses offered by a U.S. Department of Transportation (hereinafter "USDOT") school known as the Transportation Safety Institute (hereinafter "TSI") during his employment with the USDOT. Mr. Galbreath's C.V. lists twenty-two courses taken at the TSI. Of those twenty-two, sixteen are listed as "Other [TSI] Courses," none of which are related in any way to regulatory compliance. Of the remaining six courses listed under the heading "Regulatory Compliance Areas Covered," only one – "Driver Qualifications" – is related to a matter that is in issue in this case. *See* C.V., Exhibit "2". Furthermore, at his deposition, Mr. Galbreath was unable to recall exactly when he took any of these courses or how long any of the certifications he received as a result of taking them would remain effective. He could only say that he had taken them sometime in the eight years spanning

1990-1998 during which time he was employed by the USDOT.  Galbreath Tr., Exhibit "4", at p. 12:7 through p.13:8.

Finally, Mr. Galbreath's C.V. also contains a section listing "Other Transportation Safety Related Courses, consisting of nine courses offered by other entities.  The subject matter of those courses is not germane to any issue for which the Defendants seek to admit his testimony.

### 3.   Defendants Cannot Marshal Sufficient Proof To Meet Their Burden Of Showing Galbreath Is A Qualified Expert.

Given Mr. Galbreath's lack of relevant experience for the last 16 years, the paucity of relevant training he has received and his lack of formal education in any area of specialized knowledge into which Defendants plan to inquire at trial, the persuasive weight of all available evidence touching on Mr. Galbreath's qualification as an expert in this case weighs heavily against his suitability to testify.  It follows that Defendants cannot meet their burden of demonstrating his qualification by a preponderance of the evidence.  In light of the foregoing, this Court should reject Mr. Galbreath's anticipated testimony and preclude his testimony.

### B.  GALBREATH'S OPINIONS ARE AS UNRELIABLE AS HIS QUALIFICATIONS

### 1.   An Expert Who Does Not Adhere To His Own Methodology Cannot Produce Reliable Opinions .

Mr. Galbreath's opinions are all based to varying degrees on unreliable principles and methods.  While experts are granted wide latitude to offer their opinions not based on first-hand knowledge or observation, the rationale that supports allowing such latitude "is premised on an assumption that the expert's opinion *will have a reliable basis in the knowledge and experience of his discipline*."  *Daubert,* 509 U.S. at 592 (emphasis added).  Accordingly, an expert is precluded from offering opinion testimony about a subject entity when the methodology of his discipline requires him to collect firsthand knowledge of the entity through direct observation

and interaction with its agents, but he fails to do so. *Obrycka v. City of Chicago*, 792 F.Supp.2d 1013, 1020-1021 (N.D. Ill. 2011); *see also, cf. E.E.O.C. v. Beauty Enterprises, Inc.*, 2005 WL 6003547, *4 (D. Conn 2005) (Direct observation of defendants' business practices and interaction with employees was an essential part of admitted expert's method).

> **2. Galbreath Limited The Foundation Of His Opinions To The Self-Serving Evidence Proffered By Defendants, Rather Than Conducting An Independent Review Of All Evidence Available.**

As noted earlier, Mr. Galbreath's normal practice is to observe and participate in the activities of the client company prior to rendering opinions as to its regulatory compliance. *See supra* Part A.1. Here, by contrast, prior to arriving at his legal opinions, Mr. Galbreath did not observe and participate in the Volpe defendants' operations, and thus failed to engage in the direct, participatory observation in the operations of a subject company that has characterized his methodology for the past sixteen years. According to his report and testimony, Mr. Galbreath based the four legal opinions he made with respect to Volpe solely on a comparison of the FMCSR to documents and testimony provided by Volpe and its employees, including that of Mr. Rodriguez. Similarly, the sole legal opinion offered with respect to Mr. Rodriguez is based on nothing more than Mr. Galbreath's reading of Mr. Rodriguez's testimony in light of the procedures described in the text and manuals referred to in his report.

Furthermore, where the reliability of Mr. Galbreath's opinion about what Ms. Melendez could or should have been able to hear is concerned, it should be no surprise that, lacking any formal experience in the areas of study related to sound and/or acoustics, the principles and methods he employed were not so much unreliable as they were nonexistent. Galbreath admitted during his deposition that he did not inspect, listen to or reliably measure the intensity of sound emitted by the tractor involved in the incident. He further admitted that he did not perform volume testing to determine the decibel level emitted when the tractor involved in the accident

revs its engine. His report does not indicate that he took into account the testimony of witnesses who stated that there was bus traffic in the area of the intersection at the time of the accident, how that testimony affected his conclusions, or that he performed any sort of testing and/or analysis to determine the effect of the ambient traffic noise on the hearing of a pedestrian in Mrs. Melendez's position under the atmospheric conditions prevailing at the time of impact. Galbreath's audibility opinion, accordingly, is presented devoid of any methodological basis whatsoever, other than Mr. Galbreath's knowledge that Mack trucks are loud; a fact which is entirely within the capacity of a lay juror to understand and is not methodologically sufficient to render the audibility opinion reliable or admissible under Rule 702.

In addition, Mr. Galbreath admitted during his deposition that he made changes to the section of his report that covers the audibility opinion based on conversations with Mr. Keith Raven, Esq., of Raven & Kolbe, LLP, counsel to the proffering party, Ride-Aid. See Galbreath Tr., Exhibit "4", p. 37:22 through p. 38:20. That admission further undermines the reliability (such as it is) of his opinion. *See, cf. Obrycka*, 792 F.Supp.2d at 1026 (expert's admission that he had made last-minute changes in his report at the suggestion of counsel for the proffering party, weighed heavily against the reliability of his application of his principles and methods in forming his testimony).

For the foregoing reasons, the proof concerning the reliability of Galbreath's principles and methods, as well as the proof related to the reliability with which he applied them to the subjects of his opinions in this case, obviate any possibility of a preponderance finding that his opinions are reliable within the meaning of Rule 702. All of his testimony should be excluded.

### C. ALL FIVE OF MR. GALBREATH'S LEGAL OPINIONS ARE IRRELEVANT USURPATIONS OF THE ROLES OF THE COURT AND JURY.

#### 1. Mr. Galbreath's "Opinions" Are Legal Conclusions Far Exceeding The Permissible Scope Of Expert Opinion Testimony.

In the Second Circuit, prohibitions against expert testimony on questions of law are longstanding and absolute. *Romanelli v. Long Island R. Co.*, 898 F.Supp.2d 626, 634 (S.D.N.Y. 2012). "Although an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts." *U.S. v. Bilzerian*, 926 F.2d 1285, 1294 (2d. Cir. 1991); *see* Advisory Committee's Note, Fed R. Evid. 704; *see also U.S. v. Scop*, 846 F.2d 135, 139 (2d Cir. 1988), *aff'd on reh'g*, 856 F.2d 5, 2d Fed. R. Evid. Serv. 275 (2d Cir. 1988) (Fed. R. Evid. 704 does not allow experts to offer opinions embodying legal conclusions). Opinions that embrace legal conclusions are inadmissible, as they "invade the province of the court to determine the applicable law and to instruct the jury as to that law," and are accordingly not helpful to the jury in carrying out its legitimate functions. *Scop*, 846 F.2d at 140 citing *FAA v. Landy*, 705 F.2d 624, 632 (2d Cir. 1983). *See also Floyd v. City of New York*, 898 F.Supp.2d 626, 634 (S.D.N.Y. 2012) (Expert testimony as to conclusions of law would usurp the court's role in determining applicable legal standards). The admission of such testimony gives the impression that a court is shifting responsibility for deciding the case to the witness. *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 510 (2d. Cir), *cert. denied*, 434 U.S. 861 (1977).

Here, every one of Galbreath's legal opinions embodies a legal conclusion. Plaintiff's Complaint alleges that defendants violated the statutory and regulatory requirements imposed on the stakeholders and/or employees of an interstate transportation enterprise operating within the State of New York. Accordingly, the question of whether the defendants violated those regulations is directly at issue in the upcoming trial and as such, is the exclusive province of the

jury. Proof in the form of an opinion relating directly to the issue of the defendants' regulatory

violations would constitute an impermissible instruction on governing law. *See Bilzerian*, 926

F.2d at 1295.

As noted *supra*, Galbreath is expected to testify that based on his review of records

provided by Volpe that purport to document its hiring procedures, training and safety meetings,

Volpe's practices went above and beyond any regulatory requirements, that Volpe went above

and beyond the requirements of the FMCSR to ensure they hired a medically qualified driver,

that Volpe's post-accident documentation in this case went above and beyond the requirements

of the FMCSR, that Volpe was in full regulatory compliance at the time of the accident, and that

Mr. Rodriguez's testimony as to his performance of a right-hand turn and use of his mirrors falls

in line with a number of State-issued commercial driving manuals.

Each of the above opinions is nothing more than a legal conclusion regarding the Volpe

Defendants' regulatory compliance. The use of terms such as "full regulatory compliance" and

"above and beyond the requirements," which "are not self-defining terms but rather have been

the subject of diverse judicial interpretations," is indicative of the legal opinions' intrusion into

the Court's exclusive province to instruct the jury regarding the applicable law. *Cf. Scop* 846

F.2d at 140. Such opinions are not offered to educate the jury on the legal standards applicable

to the defendants, but to instruct it as to how it should find regarding the duties those standards

imposed on the defendants, and whether the defendants complied with them. *See Bilzerian*, 926

F.2d at 1295. *See also* Advisory Committee's Note, Fed R. Evid. 704 (Opinions telling the jury

what result to reach are not "helpful to the trier of fact," within the meaning of Fed R. Evid. 702,

thus inadmissible). Accordingly, Defendants should be precluded from offering those opinions

at time of trial.

### D. MR. GALBREATH'S LEGAL OPINIONS ARE CHARACTERIZED BY MULTIPLE IRRELEVANT ELEMENTS.

In addition to being contemptuous of the Court's role in defining the law for the jury, Galbreath's legal opinions are inapposite to any issue of fact to be determined in this case, which requires that they be excluded for their lack of relevance. Evidence is irrelevant when it does not make any fact that would be of consequence in determining the action more or less probable than it would be without the evidence. *See* Fed R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. Where a claim has not been made by either party against the other, evidence that is only relevant to the determination of that claim, but not to the determination of any other claim at issue is irrelevant. *See* Advisory Committee's Note, Fed. R. Evid. 401 ("Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case") (citation omitted).

Galbreath has opined that Mr. Rodriguez had a current medical examiner's certificate at the time he was hired by Volpe. Plaintiff has not alleged any issue relating to the currency of Mr. Rodriguez's medical examiner's certificate at the time he was hired by Volpe. Furthermore, Galbreath's report states that the procedures Mr. Rodriguez described performing while executing a right hand turn fell in line with the Commonwealth of Pennsylvania Commercial Driver's Manual and the New Jersey Motor Vehicle Commission Commercial Driver License Manual. However, the tortious events described in Plaintiff's Complaint all took place within the State of New York, this suit was removed from the Courts of the State of New York, and New York law supplies all rules of decision regarding her substantive claims. Plaintiff is not seeking damages based on a theory that Mr. Rodriguez's negligent actions ever violated the laws, rules, and regulations of the Commonwealth of Pennsylvania and/or the State of New Jersey. Finally, Galbreath states that Volpe's post-accident conduct was compliant with applicable

regulations. However, plaintiff's Complaint does not make any allegations concerning the adequacy of Volpe's post-accident investigation, and does not allege that Volpe's investigation had any causal relation to her injuries. Accordingly, those portions of Galbreath's opinions that pertain to those subjects are irrelevant and should be excluded.

### E. PRECLUSION OF ALL OF GALBREATH'S LEGAL OPINIONS IS WARRANTED UNDER F.R.E. 403 TO AVOID PREJUDICE AND WASTE OF COURT RESOURCES.

#### 1. Rule 403 Permits The Trial Court To Control Improper Expert Opinion By Precluding The Testimony Of Minimally Probative, Highly Prejudicial Expert Witnesses.

In addition to the other grounds discussed herein, the Defendants should be precluded from offering Galbreath's legal opinions under Fed R. Evid. 403. Evidence, including expert testimony, is subject to exclusion regardless of its putative relevance "when its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed R. Evid. 403. The Supreme Court has explicitly held that a trial court "exercises more control over experts than over lay witnesses" in applying Rule 403. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 595 (1993) (citation omitted).

#### 2. For All The Reasons Previously Discussed, Galbreath's Proffered Legal Opinions Are Minimally Probative.

The probative value of expert testimony to the trier of fact is the basis of its relevance. *See Daubert*, 509 U.S. 579 at 591 (Rule 702's requirement the expert testimony assist the trier of fact is a condition going primarily to relevance). In this case, accordingly, the probative value of Mr. Galbreath's opinions will be closely related to the question of its relevance. As discussed *supra*, although relevance is a low bar for a proponent of evidence to meet, many of Galbreath's legal opinions are not relevant, much less probative of any fact at issue in this case. However,

even if this Court should find that some of his opinions are relevant, their probative value is minimal.

Galbreath's legal opinions are not probative because they are not helpful to the jury as matter of law, for the reasons discussed [above].  *See Scop*, 846 F.2d at 140 (opinions embracing legal conclusions are not helpful to the jury).  It follows from their uselessness to the trier of fact that the legal opinions do not make any fact at issue in the case more or less likely.  Furthermore, Galbreath testified during his deposition that the legal and regulatory standards made by the U.S. Department of Transportation that he applied in forming his legal opinions were the minimum standards for his industry.  Galbreath Tr., Exhibit "4", p. 53:8-11.  The minimum standards of conduct can hardly be considered instructive on the factual issues presented by the extreme circumstances in this case, in which the Plaintiff nearly died, lost her leg, and may still lose her other leg.  Accordingly, this Court should conclude that the probative value of the proffered legal opinions, if any, is minimal.

### 3. The Proffered Legal Opinions Are Highly Prejudicial, In That They Invite The Jury To Decide Critical Issues Of Fact On A Completely Improper Basis.

Offering Galbreath's legal opinions at trial poses a clear and substantial danger of unfair prejudice.  In the context of Rule 403, unfair prejudice means "an undue tendency to suggest decision on an improper basis."  Advisory Committee's Note, Fed. R. Evid. Rule 403.  The Second Circuit has long held that conclusory expert testimony regarding regulatory compliance is highly prejudicial.  *Scop*, 846 F.2d at 140; *Marx*¸ 550 F.2d at 512.  By way of example, in *Marx*, the trial jury in a civil case had found the defendants liable for breach of a contract governing a securities transaction.  There, the trial court had allowed the plaintiffs' expert in securities regulation to testify as to legal conclusions about the obligations imposed on the defendants by that contract, as well as conclusions regarding the legal significance of facts

brought out during the trial. *Id.* at 510. The Second Circuit reversed the verdict, finding that the expert's testimony "was highly prejudicial to the [defendants]," and should have been excluded. *Id.* at 512.[3] The danger of unfair prejudice in such circumstances "is that *the jury may think that the 'expert' in the particular branch of the law knows more than the judge* – surely an inadmissible inference in our system of law." *Id.* at 512 (emphasis added). *See also Price v. Fox Entertainment Group*, 499 F.Supp.2d 382 (S.D.N.Y. 2007).

Here, as in *Marx*, the challenged testimony consists of legal conclusions about the obligations imposed by applicable laws and regulations. Furthermore, because defendants intend to ask Galbreath to offer opinions regarding whether the defendants' actions were "in line with" or "went above and beyond" the obligations imposed on them by the various legal authorities referenced in his report, he would also be testifying as to the legal significance of facts brought out at trial. As such, allowing the defendants to offer his legal opinions would suggest to the jury that it may not, or need not, rely on this Court's instructions to decide the question of the defendants' regulatory violations, and instead base its decision on Galbreath's opinions. Accordingly, the danger of unfair prejudice posed by Galbreath's legal opinions substantially outweighs whatever minimal probative value it may have.

---

[3] Although the *Marx* court also held that the testimony was inadmissible because the expert was not qualified to render it, the fact that such testimony is unhelpful and highly prejudicial was reason enough to justify exclusion: "it would not have been possible to render this testimony admissible by qualifying [the expert] as an 'expert in contract law.'" *Marx*, 550 U.S. at 509-10.

4. **Ample Proof Before The Court Suggests That Allowing Galbreath To Testify Would Merely Present Evidence That Is Readily Available From Less Problematic Sources.**

The proffered legal opinions are needlessly cumulative and time-wasting. The Court may take judicial notice of every type of statute and regulation that Galbreath drew on in formulating his opinions. *See* Fed. R. Evid. 201; *Lamar v. Micou*, 114 U.S. 218, 223 (1885) (Federal courts must take judicial notice of state statutes); *Lilly v. Grand Trunk Western Co.*, 317 U.S. 481, 488-89 (1943) (judicial notice would be taken of Federal regulation); *Christman v. Skinner*, 468 F.2d 723, 726 (2d. Cir. 1972) (Federal court properly took judicial notice of state regulations). Expert testimony may be excluded at the discretion of the trial court where similar testimony will be adduced from other sources. *See In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804, 825 (2d. Cir. 1994); *see also Cisneros v. Cities Service Oil Co.*, 334 F.2d 232 (2d. Cir. 1964) (hypothetical question and answer from expert's deposition properly excluded where evidence in the answer regarding the issue of causation was cumulative to testimony otherwise admitted).

Expert testimony constitutes a waste of time and needless presentation of cumulative evidence where all the facts on which it is based are "accurately and intelligently described to the jury and if they… are as capable of comprehending the primary facts and of drawing correct conclusions from them" as the proffered expert. *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962) (quotation omitted); *see, e.g. Zachery v. Wheeler*, 511 F.Supp. 591, 593 (E.D. Tenn. 1981) (applying *Salem* to testimony of each side's proffered experts in auto accident case); *see also In re FEMA Trailer Formaldehyde Products Liability Litigation*, 2009 WL 2169224, *3 (E.D. La. 2009) (subjects of excluded testimony were cumulative of other testimony, within the common understanding of the average juror and would not assist jury). In this case, Galbreath's proffered

legal opinions are based on two sources of information: documents provided by Volpe and the depositions of Volpe employees, including Rodriguez. All of the witnesses on whose testimony his legal opinions are based are laypersons who testified to matters that are easily comprehensible to a jury of laypersons. Similarly, all of the documents on which the legal opinions are based were created or used by the same witnesses. Furthermore, the deposition testimony demonstrates that those witnesses are more than capable of explaining their meaning from the witness stand during trial. Accordingly, the facts on which the legal opinions are based may be accurately and intelligently described to the jury, whose lay members will be just as capable of comprehending those facts as the lay witnesses who testify to them. Since the regulatory authorities Galbreath cited may all be judicially noticed by the Court, which has sole responsibility to instruct the jury on their application to the facts, further expert testimony regarding those authorities is not necessary. Given the foregoing, Galbreath's legal opinions would do nothing more than waste the Court's time and present needlessly cumulative evidence to the jury. As a result, Galbreath's testimony would be a waste of time and it should be precluded.

**CONCLUSION**

For the foregoing reasons, the Plaintiff's motion should be granted, and Defendants should be precluded from offering Galbreath's inexpert, unreliable, irrelevant, prejudicial testimony at the trial of this action.

Dated:  New York, New York
        September 11, 2013

Respectfully submitted,

NAPOLI BERN RIPKA SHKOLNIK, LLP
*Attorneys for the Plaintiff*

*By:* _____
        Joseph P. Napoli (JN9195)

350 Fifth Avenue, Suite 7413
New York, New York 10118
(212) 267-3700