RAVEN & KOLBE, LLP
Keith A. Raven, Esq. (KR-8086)
Attorneys for Defendant
RITE AID HDQTRS CORP. s/h/a
RITE AID HEADQUARTERS CORP.
126th East 56th Street, Suite 202
New York, New York 10022
(212) 759-7466

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
FELICITA MELENDEZ,                    : Civil No.: 12 Civ. 8846 (PKC)
                                      :
            Plaintiff(s),             :
                                      :
    -against-                         :
                                      :
GERARDO RODRIGUEZ, VOLPE              :
DEDICATED, INC. and RITE AID          :
HEADQUARTERS CORP.,                   :
                                      :
            Defendant(s).             :
------------------------------------X

## MEMORANDUM OF LAW
## IN OPPOSITION OF PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE OR
## SUBSTANTIALLY LIMIT OPINION TESTIMONY OF KEVIN GALBREATH

Respectfully Submitted,

By: _____
KEITH A. RAVEN, ESQ. (KR-8086)
RAVEN & KOLBE, LLP
Attorneys for Defendant
RITE AID HDQTRS CORP. s/h/a
RITE AID HEADQUARTERS CORP.

## **PRELIMINARY STATEMENT AND RELEVANT FACTS**:

This brief is submitted in opposition to plaintiff's Motion to preclude or substantially limit the testimony of Transportation Safety Specialist Kevin Galbreath. Within the instant action plaintiff, FELICITA MELENDEZ, claims to have sustained injuries as a result of an October 24, 2012 motor vehicle accident which occurred when she was a pedestrian and traversing at or near the intersection of White Plains Road and Story Avenue, County of Bronx, City and State of New York. Within plaintiff's Verified Complaint she alleges that both VOLPE DEDICATED, INC. (hereinafter "Volpe") and RITE AID HEADQUARTERS CORP. (hereinafter "Rite Aid") were negligent in a multitude of things, including the ownership, operation, management, and the entrustment of the vehicle to defendant driver GERARDO RODRIGUEZ (hereinafter "Rodriguez"). Specifically, within plaintiff's Verified Complaint, plaintiff alleges that:

> "All defendants were careless and negligent in the ownership, operation, management, maintenance, and control of the Mack truck; in failing to operate and/or entrust the use of said Mack truck to a suitable, competent, qualified, responsible, experienced, trained, diligent and adequate person; in failing to ensure that said Mack truck was operated by and/or entrusted for the use and operation as a vehicle, to a person without suitable judgment, experience, skill and diligence, who constituted a potential menace, hazard or danger to the public or otherwise, those with unsuitable propensities and those with emotional, physical, psychological and/or physiological traits or characteristics or unsuitable or unstable or contraindicated to safely operate and control such vehicle; in failing to ensure that the Mack truck was not operated by a person who was incapable of safely operating the same; in violating those statutes, ordinances, rules and regulations in such cases made and provided, of which this Court will take Judicial Notice at the time of the trial of this action."

As a result of the allegations contained within plaintiff's Verified Complaint, defendants retained the services of Transportation Safety Specialist, Kevin Galbreath, to offer opinions regarding the procedures taken by the defendants as to the vehicle in question, entrustment of the vehicle to Mr. Rodriguez, as well as opinions regarding the safety practices and other customary practices within the trucking industry. Plaintiff now brings the instant Motion to preclude or limit Mr.

Galbreath's testimony despite his vast knowledge as a Safety Transportation specialist, the trucking industry, safety standards, and over two decades of experience within the relevant fields.

## SUMMARY OF THE ARGUMENT

Despite plaintiff's counsel's erroneous contentions otherwise, Mr. Galbreath has vast knowledge of the issues of which his report and testimony address. That is, Mr. Galbreath has a wealth of experience in conducting motor carrier risk assessments, knowledge of the Motor Carrier Safety Administration Rules and Regulations, and knowledge regarding driver's qualifications. In light of all the foregoing, Mr. Galbreath's opinions will unquestionably assist the trier of fact regarding the issue of liability insomuch as plaintiff's allege that defendants negligently owned, operated, maintained and entrusted the vehicle within the instant action. Therefore, his testimony should not be precluded or limited in any way.

## ARGUMENT

As this Court is well aware, the controlling authority as to expert testimony is found within Federal Rule of Evidence 702. Which states "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702. It is the Court's duty perform the gatekeeper function to ensure that expert testimony at Trial is both reliable and relevant. See Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1973).

As noted above, within plaintiff's Verified Complaint she alleges that all defendants were negligent in the ownership, operation, management, and the entrustment of the vehicle. In an effort to defend these unfounded allegations, defendants retained Mr. Galbreath, a Safety Transportation expert with decades of experience and knowledge of the trucking industry. After

3

reviewing the pertinent materials and testimony, Mr. Galbreath authored a report which opines the following:

- Volpe Dedicated, Inc. hired driver Gerardo Rodriguez with many years of experience. He had a Class A Commercial Driver's License in which he had to pass a written and skills test. There are no regulations requiring Volpe Dedicated, Inc. to train their drivers beyond the basics of the Federal Motor Carrier Safety Regulations. All training and safety meetings completed and documented by Volpe Dedicated, Inc. that I reviewed were above and beyond any regulatory requirements. The training documents that I reviewed are very similar to several other motor carriers I have seen over the years.
- Driver Gerardo Rodriguez had a current medical certificate allowing him to operate a commercial motor vehicle in interstate commerce. Driver Gerardo Rodriguez had a recent medical examiner's certificate when being hired by Volpe Dedicated, Inc. Volpe required driver Gerardo Rodriguez to obtain a new medical certificate, though, at the time of hire. Volpe went above and beyond the requirements of the Federal Motor Carrier Safety Regulations to ensure they hired a medical qualified driver.
- Driver Gerardo Rodriguez's deposition describing his procedures in performing a right hand turn and mirror usage falls in line with the Commonwealth of Pennsylvania Commercial Driver's Manual (p2-16, p2-17, p2-25), the New Jersey Motor Vehicle Commission Commercial Driver License Manual (p2-19, p2-27), the New York State Commercial Driver's Manual (p2-15, p2-24), and the National Safety Council's Defense Driving for the Professional Truck Driver (p30).
- Volpe Dedicated, Inc. has an excellent record with the Federal Motor Carrier Safety Administration. Their Compliance, Safety and Accountability data is as good as a motor carrier can obtain. This means the FMCSA does not consider the carrier to be a risk and does not include it in its safety compliance audit program which is designed to target high risk motor carriers. There is no evidence that would indicate that this motor carrier is anything other than a law abiding company complying with all the rules and regulations of the U.S. Department of Transportation.
- There are no regulations pertaining to post-accident investigations by a motor carrier. The Federal Motor Carrier Regulations only require a motor carrier to maintain an accident register and copies of all accident reports required by State or other governmental entities or insurers. Volpe Dedicated, Inc.'s post-accident documentation is above and beyond any requirements of the Federal Motor Carrier Safety Regulations. Volpe Dedicated, Inc's procedures and documentation pertaining to the accident that occurred on October 24, 2012, is in line with the practices of several motor carriers I have observed over the years. I do not know of any company that has a safety director trained to investigate accidents and/or questions witnesses. That is a special skill with special training that is beyond a safety directors scope. Safety directors must rely on the police reports, photographs, driver statements, etc. Volpe Dedicated, Inc. conducted a post-accident controlled substance test after the accident on October 24, 2012

- when it was not required by the Federal Motor Carrier Safety Regulations. This was above and beyond regulatory requirements to ensure they had safe driver on the roadway.
- Tractors are extremely noisy. The noise is so great, that when performing roadside inspections, I utilized hand signals most of the time, because the drivers were not able to hear my verbal directions. When starting a turn from a complete stop at the red light as indicated by driver Gerardo Rodriguez stated in his deposition, he would have been revving the engine in order to start the vehicle moving forward. This would be very loud and those around the vehicle should have been aware of the tractor's presence. The plaintiff, Felicita Melendez, as a pedestrian walking on the street, should have easily been able to hear the engine of the truck and should have been aware of its presence as it approached. The loudness of the vehicle was confirmed by Mr. Carl Jenkee's deposition. Mr. Jenkee stated that he was able to hear the loudness of the truck while sitting in his car with the windows cracked.

As the below discusses in further detail, Mr. Galbreath's testimony and the above report meet the foregoing standards and, therefore, his testimony should not be limited or precluded.

### A. Galbreath Has The Requisite Knowledge, Skill, Experience, Training, Or Education To Be Rendered An Expert In The Instant Action

Since beginning his career in 1990, Mr. Galbreath has worked continuously within the trucking and safety industries and has vast experience in investigating commercial motor carriers for compliance with the Federal Motor Carriers Safety regulations, driver training programs, driver hiring procedures, and he has conducted numerous seminars pertaining to Motor Carrier Safety and compliance. In fact, as evidenced by Mr. Galbreath's *Curriculum Vitae*, Mr. Galbreath has been produced numerous times for a deposition regarding compliance regulatory requirements for motor vehicles. Mr. Galbreath has dedicated his entire twenty plus year career to analyzing and reviewing safety regulations as they related to the commercial trucking industry and has attended a plethora of classes regarding the same. As a result, Mr. Galbreath has the prerequisite knowledge to be considered an expert in the foregoing areas which are in controversy in the instant action. This is especially true considering the precedent that Courts have set forth regarding the interpretation of admissibility expert testimony since Daubert.

Courts are generally reluctant to disqualify a proffered expert witness where it is shown that the witness has useful specialized knowledge. See Palmer v. Ozbek, 144 F.R.D. 66 (D. Md. 1992). "[a] trial court should exclude an expert opinion only if it is so fundamentally unsupported that it cannot help the fact finder." Hurst v. United States, 882 F.2d 306, 311 (8th Cir. 1989). See also Loudermill v. Dow Chemical Co., 863 F.2d 566, 570 (8th Cir. 1988) (stating that "if an expert opinion is so fundamentally unsupported that it can offer no assistance to the jury, then the testimony should not be admitted").

In the instant case, Mr. Galbreath analyzed Mr. Rodriguez's qualifications, defendants' compliance with rules and regulations to the Federal Motor Carrier Safety Administration, Mr. Rodriguez's driving record, and the procedures Mr. Rodriguez took to perform a right hand turn when compared to the New York State Commercial Driver's Manual.

In addition, as testified to at his deposition, Mr. Galbreath has had over two decades in experience with very similar trucks and, thus, has extensive knowledge as to relevant noise levels that the truck in question would produce. "That is, an individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise. See Davis v. United States, 865 F.2d 164, 168 (8th Cir. 1988). Therefore, while Mr. Galbreath may not have any formal education with sound levels and auditory analysis, his practical experience and personal knowledge regarding the noise of the trucks similar to that of the one in question qualifies him to render an opinion regarding the same.

There is no doubt that Mr. Galbreath's opinions are not only supported by his experience and education, but also will assist the trier of fact as to whether defendants negligently owned, operated, or negligently entrusted the motor vehicle to Mr. Rodriguez and whether plaintiff

should have been able to hear the vehicle. As such, Mr. Galbreath's testimony easily meets the above referenced standards and, therefore, should not be stricken or limited in any fashion.

### B. Galbreath's Opinions Do Not Constitute Legal Conclusions

Plaintiff erroneously contends that five of the six of Mr. Galbreath's opinions, as contained within his report, are legal conclusions and, thus, inadmissible. However, while Mr. Galbreath's report does make reference to the Federal Motor Carrier Safety Regulations and rules and regulations of the U.S. Department of Transportation, it does not state the specific requirements. Rather, after analyzing the documentation regarding the training and safety meetings held by Volpe to instruct and train their drivers, Mr. Rodriguez's file, and all the other relevant pertinent evidence, Mr. Galbreath opined that the evidence suggests Volpe's actions were above and beyond those required.

A witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence. See Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998 (9th Cir. 2004). Here, Mr. Galbreath refers to the standards which plaintiff alleges that defendants violated and, as a result, is forced to mention the same within his opinions. While Mr. Galbreath cites these standards within his report, his opinions should not be considered inadmissible as a result. Rather, his reference of the applicable standards are used to aid the jury in understanding the allegations, the facts, and whether or not same were violated.

### C. Galbreath's Opinions Are Relevant To The Issues In Question

As discussed next, the standard for "relevant evidence" is a low threshold. As contained within Federal Rule of Evidence 401, which reads, in pertinent part, that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed.R.Evid. 401.

Despite the foregoing, plaintiff disingenuously contends that Mr. Galbreath's opinion as to Mr. Rodriguez's current medical examiner's certificate is irrelevant as plaintiff has not "alleged any issue relating to the currency of Mr. Rodriguez's medical examiner's certificate...". However, as noted above, within plaintiff's Verified Complaint she alleges defendants were negligent "in failing to operate and/or entrust the use of said Mack truck to a suitable, competent, qualified, responsible, experienced, trained, diligent and adequate person in failing to ensure that said Mack truck was operated by and/or entrusted for the use and operation as a vehicle, to a person without suitable judgment, experience, skill and diligence, who constituted a potential menace, hazard or danger to the public or otherwise, those with unsuitable propensities and those with emotional, physical, psychological and/or physiological traits or characteristics or unsuitable or unstable or contraindicated to safely operate and control such vehicle;". Quite obviously, whether or not Mr. Rodriguez had a current medical examiner's certificate is germane to or not defendants had hired someone with emotional, physical, psychological and/or physiological traits or characteristics or unsuitable or unstable or contraindicated to safely operate and control the vehicle.

In addition, plaintiff asserts that Mr. Galbreath's opinion regarding the post-accident investigation conducted by defendant is irrelevant. Since plaintiff alleges, within the instant moving papers, that plaintiff does not make "any allegations concerning the adequacy of Volpe's post-accident investigation, and does not allege that Volpe's investigation had any causal relation to her injuries" plaintiff should be barred from presenting any evidence regarding defendants' post-accident investigation.

Lastly, and notably, plaintiff does not dispute that Mr. Galbreath's opinion as to defendant-driver Rodriguez's procedures as to the right hand turn falling in line with the New

York State Commerical Driver's Manual and National Safety Council Defensive Driving for the Professional Truck Driver. As such, clearly both are relevant for the purposes of the instant action.

### D. Galbreath's Opinions Are Not Limited To Self-Serving Evidence Proffered By Defendants

Mr. Galbreath reviewed all of the relevant materials as to the ownership, operation, management, and the entrustment of the vehicle, all of which plaintiff put directly into question by filing her Verified Complaint. Mr. Galbreath, who, as noted earlier, is extensively familiar with the Federal Motor Carrier Safety Regulations, found that defendants were not only in compliance with the same, but that their practices went "above and beyond" those required. The fact that Mr. Galbreath reviewed, *inter alia*, Mr. Rodriguez's deposition testimony to reach this conclusion should not disqualify his opinion. Furthermore, while plaintiff has alleged that defendants have negligently entrusted the vehicle to Mr. Rodriguez, the record is completely void of any evidence to that end and, therefore, Mr. Galbreath reviewed the applicable evidence and offered his expert opinion regarding the same.

In addition to the foregoing, and as stated above, Mr. Galbreath's opinions concerning the truck and the noise it produced are based upon his experience and personal knowledge of the same types of vehicles as the one in question. And, as also cited above, "an individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise." See Davis v. United States, 865 F.2d 164, 168 (8th Cir. 1988). Therefore, Mr. Galbreath's reliability as to to the principles and methods upon which he founds his opinion satisfy the standard set forth in Rule 702.

Lastly, despite plaintiff's contentions, defense counsel did not suggest that Mr. Galbreath make any changes to alter his opinion. In fact, Mr. Galbreath merely testified that defense counsel wanted him to "give a little more in-depth" on the auditory opinion. Therefore, plaintiff's insinuations that counsel proffered Mr. Galbreath's report should not be considered.

### E. Galbreath's Opinions Are Not Prejudicial Nor A Waste Of Court Resources

Within the instant moving papers, plaintiff asserts that Mr. Galbreath's opinions are "not probative because they are not helpful to the jury as a matter of law, the reasons discussed [above]". However, and as noted within the instant papers, plaintiff has alleged that defendants were negligently owned, operated, maintained and entrusted the vehicle within the instant action. Mr. Galbreath's opinions directly address those assertions that the plaintiff has put into question. Undoubtedly, plaintiff's contentions that Mr. Galbreath's testimony is "prejudicial" or a "waste of Court resources" is disingenuous.

Further, plaintiff's argument again relies on the incorrect assertion that Mr. Galbreath's opinions constitute legal conclusions. However, for all the reasons stated above, Mr. Galbreath's opinions regarding the defendants' actions regarding the truck in question and Federal Regulations are not legal conclusions, but rather his expert opinion which was formed after a review of all pertinent evidence.

### CONCLUSION

For all the foregoing reasons, namely, Mr. Galbreath's extensive knowledge regarding the issues addressed within his report and testimony, the allegations within plaintiff's Complaint, and the applicable case law, it is respectfully submitted that the Court deny plaintiff's Motion to preclude or substantially limit the testimony of Transportation Safety Specialist Kevin Galbreath.

Dated: September 15, 2013
New York, New York

                    RAVEN & KOLBE, LLP
                    Attorneys for Defendant
                    RITE AID HDQTRS CORP. s/h/a
                    RITE AID HEADQUARTERS CORP.

                By: _____
                    KEITH A. RAVEN, ESQ. (KR-8086)

TO:

NAPOLI BERN RIPKA SHKOLNIK, LLP
Attorney for Plaintiff
FELICITA MELENDEZ
350 5th Avenue, Suite 7413
New York, New York 10118
Tel. (212) 267-3700

DURKIN & DURKIN, LLP
Attorneys for Defendants
GERARDO RODRIGUEZ and
VOLPE DEDICATED, INC.
80 Broad Street, 5th Floor
New York, New York 10004
Tel. (212) 349-8173
Fax (212) 858-5770