UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
File No. 3371-1

| FELICITA MELENDEZ, | FILED VIA ECF |
|---|---|
| Plaintiff(s), | CIVIL ACTION NO. 12-CV-8846 (SMK) |
| -against- | |
| GERARDO RODRIGUEZ, VOLPE DEDICATED, INC. and RITE AID HEADQUARTERS CORP., | |
| Defendant(s). | |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO PRECLUDE/SUBSTANTIALLY LIMIT THE EXPERT TESTIMONY OF KEVIN GALBREATH

DURKIN & DURKIN, LLP
80 Broad Street-Fifth Floor
New York, New York 10004
(212) 349-8173
Attorneys for Defendants
Volpe Dedicated, Inc. and Gerardo Rodriguez

On the Brief:
Stephen M. Knudsen, Esq.

### PRELIMINARY STATEMENT:

Defendants **VOLPE DEDICATED, INC.** (hereinafter "**VOLPE**") and **GERARDO RODRIGUEZ** (hereinafter "**RODRIGUEZ**") (Collectively "**THE VOLPE DEFENDANTS**") submits this brief in opposition to plaintiff's motion to preclude/substantially limit the testimony of the safety expert Kevin Galbreath exchanged by defendant **RITE AID HEADQUARTERS**

CORP. ("RITE AID"). Plaintiff Felicita Melendez (hereinafter referred to as "Plaintiff") claims to have sustained injuries in the early morning on October 24, 2012 after being struck by a **VOLPE** truck that **RODRIGUEZ** was driving while plaintiff was walking through the north cross walk at the intersection of White Plains Road and Story Avenue in the Bronx headed towards a bus stop on the northeast side of White Plains Road north of that cross walk.

On August 8, 2013, **RITE AID** served an expert exchange as to Kevin Galbreath as a safety expert. On August 28, 2013, counsel for plaintiff took Mr. Galbreath's deposition.

As detailed below, the Court should not grant plaintiff's motion to preclude as (1) Mr. Galbreath's testimony meets the standard for admissibility under FRCP 702 and interpretive cases.

## COMBINED STATEMENT OF PROCEDURAL HISTORY AND MATERIAL FACTS

Plaintiff alleges that sometime after 6 a.m. on October 24, 2012, she was walking in the north cross walk of White Plains Road at the intersection of White Plains Road and Story Avenue when she struck by a tractor trailer, which caused her to suffer serious leg injuries to both her legs. **RODRIGUEZ** confirms that he turned right into the intersection and that some contact occurred between the **VOLPE** tractor trailer he was driving and plaintiff but that any impact occurred well north of the cross walk. Among other allegations, plaintiff is alleging that **RODRIGUEZ** was negligent in making the turn onto White Plains Road and as a result struck plaintiff as she walked in the North cross walk of the intersection of White Plains Road and Story Avenue in the Bronx. Likewise, plaintiff is alleging that **VOLPE** was negligent in the hiring, and training of **RODRIGUEZ** and in their post incident investigation. On August 8, 2013, **RITE AID** exchanged Kevin Galbreath as a safety expert. Prior to rendering his opinion, Mr. Galbreath

read all the deposition transcripts in the case regarding liability, all the relevant exhibits from those depositions, the Volpe Incident Report, scene pictures and pictures of the **VOLPE** tractor trailer, the **VOLPE** personnel file regarding **RODRIGUEZ**, and various relevant safety standards and manuals. We respectfully refer the Court to the accompanying Knudsen Affidavit in support for a factual recitation.

# ARGUMENT

## POINT I

### THE REPORT AND TESTIMONY OF KEVIN GALBREATH METS THE STANDARD FOR ADMISSIBILITY SET FORTH IN F.R.C.P. 702 AND THIS COURT SHOULD EXERCISE ITS DISCRETION NOT PRECLUDE THAT TESTIMONY OR LIMIT IT IN ANY WAY.

F.R.C.P 702 provides the framework through which a District Court judge serves a gatekeeping function by exercising his or her discretion in ruling on the admissibility of expert testimony. Rule 702 and the flexible and fluid standard set forth in *Daubert v. Merrill Dow 509 US 579, 113 S. Ct 2786 (1993)* are intended to, consistent with a liberal standard of admissibility, ensure that "…an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, supra at 597. In fulfilling that gatekeeping role, the Court should apply "…the standards of Rule 401 in analyzing whether proffered expert testimony is relevant, i.e., whether it 'has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" See *Amorgianos v. National 303 F3d 256, 265 quoting Campbell v. Metro Prop & Cas. Ins. Co. 239 F3d 179, at 184*. To assure that expert testimony meets this standard, the Daubert Court found that such testimony must meet a four fold test. Specifically, to be admissible, the expert's opinion is admissible if (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) The testimony is based on sufficient facts or data; (3) The testimony is the product of reliable principles and methods and (4) The expert has reliably applied the principles and methods to the facts of the case. Applying the Daubert standard to Kevin Galbreath's opinions as expressed in his report, it is plain that Mr. Galbreath's testimony should be admitted.

4

Kevin Galbreath's opinions, save the final one, all related to safety, either in them operation of the vehicle or as to **VOLPE**'s practices in hiring and in responding to this incident. See the Galbreath opinions set forth in the Knudsen Declaration. All of these opinions are within the scope of Mr. Galbreath's chosen vocation. On each of these opinions, Mr. Galbreath meets the Daubert standard as et forth below:

### A. <u>GALBREATH HAS THE VERY TYPE OF BACKGROUND AND KNOWLEDGE BASE THAT IS NEEDED TO SUPPORT HIS OPINIONS.</u>

For the last 10 years, Mr. Galbreath has worked as a Transportation Safety Consultant who specializes in motor carrier loss control programs and regulatory compliance issues. (Exhibit 1, curriculum vitae). As part of this role, he is involved with Motor Carriers in both driver training, driver hiring procedures and accident reduction. In addition, Mr. Galbreath evaluates regulatory compliance, driver turnover, accident trends and other loss control programs. Further, he recommends and advises motor carriers pertaining to regulatory compliance. Prior to his current role, Mr. Galbreath spent 13 years employed in various safety roles all of which involved Motor Carriers including a stint as a Florida State Safety Specialist, a South Carolina Hazardous materials specialist, a period of time asa Safety auditor of Motor Carriers for the State of South Carolina and finally 5 years as a Safety and Loss Control Specialist for Great Western performing essentially the same tasks he has been perofrming in his own business. In reviewing these qualifications, it is hard to envision a work life and background that would make Mr. Galbreath more qualified to offer such opinions. The first three of Galbreath's opinions relate to **VOLPE**'s practices in investigating, hiring and training **RODRIGUEZ**, and the fifth opinion related to how **RODRIGUEZ** performed at the time of this icnident. Mr. Galbreath is perfectly qualified to speak to these issues based on his years of experience in advising Motor Carriers on hiring procedures, and driver training procedures.

The fact that Mr. Galbreath's work was primarily in the South does not adversely effect his qualifications at all. All major Motor Carriers, including Great West do not limit their routes to tehe south but cover various aprts of this country. Is counsel for plaintiff suggesting that hiring procedures and training procedures for southern companies are different? Such an assertion is ludicrous and plaintiff has not provided any evidence to support it. Is counsel for plaintiff asserting that there are no major cities in Florida or Georgia where traffic is congested and there is a large population. Again, this begs credulity.

The fact that much of Mr. Galbreath's experience involved observing and then trouble shooting for motor carriers bolsters, not lessens, his qualifications for the opinions he expressed in this case. Indeed, it is those very observations that for the base of knowledge for his fourth opinion concerning **VOLPE**'s post accident investigation. Mr. Galbreath has no doubt seen the good and bad in those many years of observing and auditing the investigation practices of motor carriers and can assert with a reasonable degree of certainty when such practices met or surpass State and Federal requirements. The same holds true as to Mr. Galbreath's Sixth opinion: Mr. Galbreath has held positions dealing with motor carriers, and thus tractor trailers for the last 23 years. He could not be more qualified to offer the opinion that a person standing anywhere near a tractor trailer as it moves forward would definitely hear it. Plaintiff is simply very concerned that Mr. Galbreath's opinion speaks directly to plaintiff's highly incredible testimony that he never heard the tractor trailer before being struck.

### B. GALBREATH'S TESTIMONY IS BASED ON MORE THAN SUFFICIENT FACTS.

Mr. Galbreath reviewed all the relevant depositoin testimony, exhibits from those depositions and various relevant Federal and State Safety standards prior to testifying. In

reviewing his report in relation to its purpose, there is no other evidence in the case he could have reviewed.

### C. GALBREATH'S OPINIONS ARE BASED ON RELIABLE PRINCIPLES AND METHODS.

Mr. Galbreath based his opinnions concerning **VOLPE**'s hiring procedure, training procedure and post incident response procedure as well as his opinion on how **RODRIGUEZ** performed as a driver on his countless years of experience consulting and working with motor carriers on those very issues as well as various Federal and State standards for the same. Again, it would be a struggle to envision a more reliable basis for those opinions. Liewise, certainly 23 years of working near and around tractor trailers provies a reliable method to opine that plasintiff should have hear the **VOLPE** tractor trailer as it approached her.

### D. GALBREATH RELIABLY APPLIED THE ABOVE PRINCIPLES AND METHODS.

Mr. Galbreath's opinions reference specifically all the relevant Federal and State standards that he has incorporated into his work, as well as the practices of "…motor carriers Galbreeath ahs observed over the years." As to his opinion concerning the noise of the **VOLPE** tractor trailer, he referenced his own experience in conducting roadside inspections where he used "…hand signals most of the time; because the drivers were not able to ehar my verbal directions.". In sum, Mr. Galbreath was very careful to anchor his opionons to a proper use of the principles and methods he has learned in all the years he has been in safety and compliance end of the motor carrier operation. Mr. Galbreath's conclusions are offered to a resonable degree of professional certainty which are sufficiently supported by underlying facts. His expert opinion will assist the trier of fact and must not be barred or limited.

## POINT II

## THE REPORT AND TESTIMONY OF KEVIN GALBREATH ARE FACTUAL IN NATURE AND ARE NOT LEGAL OPINIONS.

An opinion of an expert that is based in the facts is not rendered inadmissible when that expert then cites to relevant statutes. See F.R.C.P § 704(a); *Hangarter v. Provident 373 F3d 998 (9th Cir 2004); Hered v. Seneca 2008 US Lexis 111943 (USDC-Middle District PA 2008); Gallatin Fuels v. Westchester Fire 410 F Supp 2nd 417 (USDC-Western District of PA 2006).* Galbreath's opinions are all anchored in the facts of the matter and to the extent Mr. Galbreath references standards of law, such opinions are all based on application to the facts. Thus, they should be admitted by this Court.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Court deny plaintiff's motion to preclude or substantially limit Kevin Galbreath's testimony.

Dated: September 18, 2013
New York, New York

DURKIN & DURKIN, LLP
Attorneys for Defendants **VOLPE** and **RODRIGUEZ**

By: /Stephen M. Knudsen (SK 0539)
80 Broad Street
Fifth Floor
New York, New York 10004
(212) 349-8173

TO: Napoli Bern Ripka Shkolnik, LLP
Attorney for Plaintiff
Attn: Joseph Napoli, Esq.
350 5th Avenue, Suite 7413
New York, New York 10118

Raven & Kolbe, LLP
Attorney for RITE AID
Att.: Keith A. Raven, Esq.
126 East 56th Street, Suite 202
New York, New York 10022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
3371-1

FELICITA MELENDEZ,

               Plaintiff(s),

-against-

GERARDO RODRIGUEZ, VOLPE DEDICATED, INC. and RITE AID HEADQUARTERS CORP.,

               Defendant(s).

CIVIL ACTION NO. 12-CV-8846 (SMK)

AFFIRMATION OF SERVICE

I, *STEPHEN M. KNUDSEN*, affirm under penalties of perjury that the original *MEMORANDUM OF LAW* was e-filed with the Supreme Court of the State of New York, Southern District and that a copy of same was sent by regular mail postage prepaid to the following:

TO:  Napoli Bern Ripka Shkolnik, LLP
       Attorney for Plaintiff
       Attn: Joseph Napoli, Esq.
       350 5th Avenue, Suite 7413
       New York, New York 10118
       jnapoli@NapoliBern.com

Raven & Kolbe, LLP
Attorney for RITE AID
Att.: Keith A. Raven, Esq.
126 East 56th Street, Suite 202
New York, New York 10022
kraven@ravenkolbe.com

Dated: September 18, 2013
       New York, New York

**DURKIN & DURKIN, LLP**

By: *[signature]*
Stephen M. Knudsen (SMK)
Attorneys for Defendants **VOLPE & RODRIGUEZ**
80 Broad Street, Fifth Floor
New York, New York 10004