

**Investigative Technologies Inc.**

ROBERT L. MILLER, M.S.M.E., P.E.
CERTIFIED ACCIDENT RECONSTRUCTIONIST

CELEBRATES
**25**
*years*
OF SERVICE

1.800.780.4221
www.cedtechnologies.com

Respond to: Annapolis Office

August 1, 2013



Stephen Knudsen
*Durkin & Durkin, LLP*
1120 Bloomfield Avenue
P.O. Box 1289
West Caldwell, NJ 07007

Reference:    **Volpe Dedicated, Inc. & Gerardo Rodriguez advs. Felicia Melendez**
**Index No.: 22711/2012#**
**Civil Court Action No.: 12-CV-8846**
**Your File No.: 3371-1**
**CED Case No.: 52126.1**

Dear Mr. Knudsen:

On November 9, 2012, CED was asked to review file materials, inspect an involved vehicle and visit the scene of a motor vehicle/pedestrian incident. The incident occurred on the morning of October 24, 2012, at/near the intersection of Story Avenue and White Plains Road in the Bronx, New York. The incident took place at approximately 6:26 am (sunrise 7:17 am). Ms. Felicia Melendez was crossing White Plains Road, in an easterly direction, when she was struck by a Volpe Dedicated, Inc. (Rite Aid) tractor and semi-trailer. The purpose of the CED investigation was to determine the cause of the incident.

**Investigation**

The CED investigation included:

1. Review of the Police Accident Report, 043 Precinct, Accident No.: 2541, prepared by Ofc. Charesse Davis;
2. Transcripts of the following EBTs;
   a. Carl Jankee taken 3/4/2013 with exhibit A (witness);
   b. Felicia Melendez taken 3/6/2013 w/o exhibits (pedestrian);
   c. Gerardo Rodriguez taken 3/12/2013 with most exhibits (truck driver);
   d. Christopher Prince taken 3/12/2013 with exhibit (Volpe Director of Safety);
   e. Ofc. Charesse Davis taken 4/25/2013 with exhibit (investigating officer);
   f. Ofc. Sean O'Dwyer taken 4/25/2013 no exhibits marked (assisted Ofc Davis);

| *New York / New England* | *Baltimore / Washington* | *Cleveland* | *Chicago* | *West Palm Beach* | *Jacksonville* |
|---|---|---|---|---|---|
| 88 Trap Falls Road | 2444 Holly Avenue | 20033 Detroit Road | 125 Windsor Drive | 609 SE Central Parkway | 6817 Southpoint Parkway |
| Shelton, Connecticut 06484 | Annapolis, Maryland 21401 | North Ridge Annex, Suite E | Suite 115 | Stuart, Florida 34994 | Suite 1001 |
| 203.929.1339 tel. | 410.224.4235 tel. | Cleveland, Ohio 44116 | Oak Brook, IL 60523 | 954.892.6476 tel. | Jacksonville, Florida 32216 |
| 203.929.1534 fax | 410.841.6605 fax | 440.356.6195 tel. | 312.239.6659 tel. | 772.382.2355 fax | 904.281.7935 tel. |
| | | 440.356.6205 fax | 312.277.3733 fax | | 904.281.7936 fax |

Page 2 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

      g.  Blair Buskirk taken 5/21/2013 w/o exhibits (Volpe manager for Rite Aid account);

      h.  Angel David Ayala taken 6/19/2013 w/o exhibits;

      i.  Corey Tillery taken 6/19/2013 w/o exhibits..

3. Agilis GPS Data for 10/24/2012 for Volpe tractor 443;
4. Defendant's Responses to Plaintiff's First Demand for Interrogatories;
5. Defendant's Further Response to Document Request of Plaintiff;
6. Gerardo Rodriguez Sprint phone records for 10/8 through 11/7/2012;
7. Volpe Express Sprint phone records for 10/6 through 11/5/2012;
8. US Naval Observatory Astronomical data (http://aa.usno.navy.mil);
9. Google Earth aerial images and Street View images;
10. Pedestrian Accident Reconstruction; Eubanks, Jerry, Lawyers and Judges Publishing
11. ARAS HD 2.1.0;
12. NY and PA Commercial Driver's Manuals.

Additionally CED performed the following inspections:

1. Inspection of Volpe Dedicated Mack tractor (#443) and Great Dane semi-trailer (#611161) by Peter Chen 11/13/2012 at Volpe facility in Fairless Hills, PA;
2. Scene visit by Robert Miller 2/25/2013;
3. Scene visit and truck demonstrations, Mack tractor (#443) and Great Dane semi-trailer (#611162), by Robert Miller 5/31/2013.

**Background**

On the morning of October 24, 2012, there was a pedestrian involved incident at the intersection of White Plains Road (N/S) and Story Avenue (E/W). Bruckner Plaza is located on the southeast corner of this intersection. Figure 1 is provided for orientation.



Figure 1 – Bruckner Plaza

**CED Technologies, Inc.**

Page 3 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

This incident occurred at approximately 6:26 a.m., Wednesday October 24, 2012 (police report). 51 minutes prior to a 7:17 a.m. sun rise. Mr. Rodriguez had entered Bruckner Plaza from White Plains Road and drove easterly along the ONE WAY traffic lane immediately in front of several stores before stopping at Rite Aid. GPS data (discussed later) indicated that Mr. Rodriguez reported his arrival to begin his delivery at 4:38 a.m. At 6:26 a.m., Mr. Rodriguez completed his delivery and started to go to his next delivery at a Rite Aid store at Bronxdale and Morris Park Avenues, approximately 2 miles north of Bruckner Plaza.

At the intersection of Story Avenue and White Plains Road, Mr. Rodriguez was turning right to go northbound on White Plains Road. At the same time, Ms. Melendez was crossing White Plains Road in an easterly direction, on the north side of Story Road. Before Ms. Melendez completed crossing White Plains Road, she was struck by Mr. Rodriguez's truck. Ms. Melendez has testified that she neither saw nor heard the truck prior to being struck. Similarly, Mr. Rodriguez has testified that he did not see Ms. Melendez in the crosswalk prior to or during the execution of his right turn.

An independent witness, Carl Jankee, indicated that he was westbound on Story Avenue and was the first car stopped at the RED light at White Plains Road. Mr. Jankee indicated that the Rite Aid tractor-trailer was approaching the intersection on Story Avenue, east bound, on the opposite (west side) of the intersection. Mr. Jankee has testified that the Rite Aid truck made a left turn and he saw Ms. Melendez tumbling under the trailer of the truck north of the crosswalk.

## Review of Written Materials

### Rodriguez Written Statement

Mr. Rodriguez provided a written statement on October 24, 2012 to Volpe Dedicated. The statement reads:

"This morning a 6:25 am, I was driving from the store 4421 located in Bruckner Blvd. when I came to the intersection Story Ave & White Plains Rd. My light at the time is red. As soon as it turn green I made my right turn in White Plains Rd. Following that right turn I looked over the right side mirror to make sure that everyone was good with my trailer while I was making that right turn. After that when I turned my attention to the front I noticed that with my truck I had hit a lady tha(sic) was jaywalking at the time of the accident. We came to the conclusion then the accident happen 27-30 feet from the intersection. It was very dark at the time of the accident, while tha(sic) was in process the police was called to the scene the officer took the report and asked questions to me and a witness tha(sic) was there as well. I called my dispatcher to advise if the accident to make sure that they were aware that the police was on scene."

CED Technologies, Inc.

Page 4 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

Attached to his statement was his drawing of the intersection marking his path of travel and where the pedestrian came to rest.  This statement with the diagram had been marked as Exhibit P-1 and the diagram individually was marked as Exhibit P-39.

**Deposition transcripts**

**Gerardo Rodriguez** deposition provided the following:

1. Had two cell phones in the truck, one personal and the other was a company phone (pages 36 & 37);
2. Company cell phone is assigned to a specific tractor (page 37);
3. Company cell phone is used to track the location of the tractor (page 38);
4. Had three stops to make in the Bronx; Bruckner Blvd, Morris Park and East Tremont Ave. (page 49);
5. Had been to each stop 8 to 10 times before but never all three in a single trip (page 50);
6. Trailer was 48 feet long (page 51);
7. First delivery was to Bruckner Blvd. (page 59);
8. Entered Bruckner Plaza from White Plains Road (page 60 and 66);
9. Left Bruckner Plaza making a left onto Story Avenue (page 71and 72);
10. While on Story Avenue approaching White Plains Road there were no vehicles ahead of him (westbound) and no vehicles approaching him (eastbound) (page 75);
11. Saw no pedestrians on the sidewalks along Story Avenue as he was approaching White Plains Road. (page 75);
12. The traffic signal for westbound Story Avenue changed from "amber" to red when Mr. Rodriguez first entered Story Ave. (page 77);
13. Stopped for the red light when he reached White Plains Road (pages 77 and 78);
14. While stopped, for 25 seconds, cars passed on White Plains Road and a school bus approached from his left (northbound) and a MTA bus from his right (southbound) (page 78);
15. School bus stopped at the intersection, then made a left onto westbound Story Avenue (page 79);
16. The southbound MTA bus stopped on the north side of Story Avenue due to the traffic signal turning red (page 79);
17. Mr. Rodriguez could see the intersection and vehicles clearly. (page 80);
18. Saw two vehicles, other than the buses, pass by on White Plains Road. (page 88);
19. Both additional vehicles came from his left. (page 89);
20. While stopped at the red light he did not see anyone standing on the corners. (page 89);
21. Mr. Rodriguez saw no one standing on the corner (NW) in front of the restaurant as shown in Exhibit P-6. (page 89);

Page 5 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

22. While Mr. Rodriguez was stopped at the red light, he did not see any pedestrians cross Story Avenue, on the west side of White Plains and saw no pedestrians standing in front of the crosswalk on the northwest corner of the intersection. (page 90);

23. Mr. Rodriguez did not see anyone standing on the northwest corner of the intersection. (page 91);

24. Saw no one on the sidewalk on the west side of White Plains Road, in front of the stopped MTA bus or behind the MTA bus. (page 91);

25. When light turned green, "I waited until they went to make the turn and after he went, I started forward. … The school bus." (page 93);

26. Mr. Rodriguez started moving with his truck in 2nd gear. (page 93);

27. Mr. Rodriguez used half of White Plains Road lane 1, left lane of two, making his right turn to go northbound (page 94);

28. Mr. Rodriguez trailer went into White Plains Road lane 2, right lane, and the tractor never crossed the double yellow line on White Plains Road. (page 95);

29. Starting his right turn, Mr. Rodriguez was able to see the road. (page 95);

30. "I saw nothing in the middle of the street and there was nothing." (pages 95 and 96);

31. Mr. Rodriguez was able to see the cross walk. (page 96);

32. Mr. Rodriguez did not see any vehicles coming at him (southbound) or in the other direction (northbound) as he was making his right turn. (page 96);

33. As Mr. Rodriguez was turning right, onto White Plains Road, he could see; "You could see 25, 30 feet." down the road. (page 97);

34. Beyond 30 feet "It was a little dark.  The area was a little dark." (page 97);

35. Mr. Rodriguez was first aware that something had happened "When I looked into my mirror and I saw in the road. … At that moment I didn't know.  I stopped the truck and I went – I came out to look." (page 98);

36. Mr. Rodriguez made his observation using, "The left (mirror), next to the driver's door. … The upper one (mirror)." (page 99);

37. Mr. Rodriguez was going "Five to six miles per hour." when he made his observation. (page 99);

38. What he saw was in lane 2 with the left side of his tractor 10 feet from the double yellow centerline. (page 100);

39. Stopped with his tractor in lane 2. (page 101);

40. "When I arrived in the back, there was another person standing there calling over the phone – talking over the phone." (page 102);

41. Next a plain clothed police officer approached. (page 103);

42. When he went back, "I saw a person on the ground and he was complaining that he had a pain in his leg. …It was a woman. …She was her back facing the ground." (page 105);

43. He did not tell anyone he did not see her. (page 106);

44. Police, "They asked me where did you come from and where were you going, and I explained." (page 107);

Page 6 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

45. Did not see the person lying in the street before the incident. Never told police that he had seen the pedestrian crossing in the middle of the street. (page 108);
46. Mr. Rodriguez called his dispatcher and was told to take pictures. (page 110);
47. Utilizing Exhibit P-50 and P-51, top and bottom pictures, Mr. Rodriguez made circles to mark where Ms. Melendez was, before being put in the ambulance. These circles are just east of double yellow centerline and well north of crosswalk. (pages 113 and 114);
48. After returning to his employer, he spoke with Blair (Buskirk). (page 115);
49. Mr. Rodriguez hand wrote a statement dated October 24th. (pages 115 and 116);
50. Mr. Rodriguez was asked if he wrote, "Following the right turn, I look over the right side mirror." To which he indicated he recalled writing that. (page 119);
51. "I looked into the right mirror to see whether I turn the corner successfully." (page 119);
52. Mr. Rodriguez statement indicated, "I noticed that with my truck I had hit a lady…" (pages 120 and 121);
53. Mr. Rodriguez was asked what part of his truck hit the lady. To which he answered, "I cannot say. I don't know. That's why I told you it was a conclusion." (page 121);
54. "When I saw (pedestrian lying in street) for the first time in my mirror." (page 122);
55. Mr. Rodriguez statement indicated "…that with my truck, I had hit a lady that was jaywalking." But he did not know what part of the truck and that his statement was a conclusion he made because he never saw the pedestrian. (page 122 and 123);
56. Mr. Rodriguez overheard a police officer commenting to another officer about jaywalking. (page 123);
57. Mr. Rodriguez did not see the pedestrian jaywalking. (page 124);
58. Mr. Rodriguez statement indicated he struck the pedestrian 27 to 30 feet from the intersection. (page 125);
59. Mr. Rodriguez stepped off the distance. (page 125);
60. Mr. Rodriguez's statement (Exhibit P-1) indicated "It was very dark at the time of the accident…" but "…you could see." (page 127);
61. Using Exhibit P-60 in response to a question, "Q. Do you see blood in the street?" Mr. Rodriguez answered, "Yes" and circled what he thought was blood in the street. (pages 127 and 128);
62. Mr. Rodriguez drew a box on Exhibit 60 at a spot where plaintiff counsel pointed. Mr. Rodriguez could not identify what was in the box. (page 129);
63. He did not see blood, or did not recall seeing blood, the morning of the incident while he was taking pictures. Looking at Exhibit P-60 is the first time he saw blood in the street. (page 129);
64. First time he saw Ms. Melendez she was in the position indicated in Exhibits P-1 and P-39. (page 131and 132);
65. He never saw the pedestrian standing up or walking. (page 132);

CED Technologies, Inc.

Page 7 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

66. Before he made his turn there was a car behind him.  The driver was the man with the cell phone when he first walked back to where Ms. Melendez was lying in the street. (page 133);

67. Truck had blind spots on the right side, "It's called the blind side."  There are no blind spots on the left side of the truck. (page 136);

68. Could not make a "right turn from Story onto White Plains Road into lane number two without going into lane number one." (page 137).

**Felicita Melendez** deposition provided the following:

1. Lived at 875 Taylor Ave  (5 blocks west of White Plains and in first block south of Story Ave) (page 4);

2. Ms. Melendez took the 39 bus to work Sunday through Wednesday. (page 12);

3. Ms. Melendez walked north on Taylor, made a right onto the south sidewalk along Story Ave.  Crossed Story Ave at White Plains to "where the restaurant is." (pages 20 and 21);

4. Ms. Melendez walked alone on Story Ave. Page 21);

5.  As Ms. Melendez walked east on the south sidewalk of Story, she saw a few cars pass on Story Ave but no trucks. (page 24);

6.  Ms. Melendez waited "…not a long time." Before she crossed Story Ave. (page 30);

7. Traffic passed, on Story Ave, from Ms. Melendez's left to right while she waited to cross Story Ave. (page 31);

8. Ms. Melendez did not know if there was a painted crosswalk to cross Story Ave. (page 32);

9. Ms. Melendez looked at the pedestrian crossing signal when she started to cross Story Ave., but does not remember what the signal indicated. (pages 32 and 33);

10. Ms. Melendez was asked, "How long did it take you to cross Story Avenue to get over to where Jimmy's Restaurant was?"  To which she answered, "Not very long. … Maybe two minutes, three minutes." (page33);

11. Ms. Melendez did not see or hear any trucks on Story Ave when she crossed over Story Avenue to the corner by the restaurant. (page 34);

12. No other pedestrians on the corner by Jimmy's Restaurant after she crossed Story Avenue. (page 34);

13. "Where the restaurant is, waiting for the light to come in order for me to cross. … I was waiting there by the restaurant, waiting a little while for my light to come in order for me to cross." (page 35);

14. The signal was across White Plains Road. (page 35);

15. Ms. Melendez indicated that no cars passed on White Plains while she waited to cross. (page 37);

16. Ms. Melendez intended to go to the bus stop across White Plains and to the north of the crosswalk. (page 37);

**CED Technologies, Inc.**

Page 8 –Melendez v. Volpe Dedicated, et al. - CED Case No.: 52126.1

17. Ms. Melendez waited "Maybe two minutes, three minutes. I don't remember that well." Before she crossed White Plains. (page 41);

18. While Ms. Melendez waited to cross White Plains there was no one else standing near her. (pages 41);

19. Ms. Melendez saw no trucks on Story Avenue or White Plains before she crossed White Plains. (pages 42 and 43);

20. There was a crosswalk across White Plains for her to cross in. (page 43);

21. After Ms. Melendez waited for the signal to change, "I saw that no cars were coming from the right nor the left. I was walking along where the lines are." (page 44);

22. When Ms. Melendez started crossing White Plains there were no cars coming on Story Ave. (page 44);

23. "…when I walk, I always look." (page 44);

24. While crossing something happened to her when, "I was almost arriving at the other side. I don't know how many steps." (page 48);

25. Something happened to her, "When I was more or less like halfway." (page 49);

26. While Ms. Melendez was crossing White Plains she was looking "To the right, to the left. … there was no traffic." (pages 49 and 50);

27. Heard no traffic as she crossed White Plains. (page 50);

28. "I remember that I was crossing there alone. … When I was crossing, I was crossing alone." (page 50):

29. "…while I was crossing, there were no cars coming from here nor here. And I felt like a truck came and hit me. … I was crossing, and then from Story, I think it came and it hit me on my body." (page 52);

30. With respect to where the truck came from; "Not from the right or the left, but from the other side. … From this side of Story." (page 53);

31. Truck hit Ms. Melendez on her right side. (page 53);

32. Prior to being hit, Ms. Melendez never saw or heard the truck that hit her. (pages 53 and 54);

33. "I was walking, and I think on this side, it came and it hit me. … Because no cars were coming, there was no traffic at that time." (page 64);

34. "I was walking like this on White Plains Road, and I think, like from this side (indicating her right side) and it hit me." (page 65);

35. "I was walking on this side. I know the truck came and hit me on this side (right)." (page 67);

36. "I don't remember, I don't remember really where the truck was coming from. I know it hit me on this side." (page 69);

37. Ms. Melendez was asked if the truck came from the mall side of White Plains. "I think so, but I'm not sure. May I say? I don't know where the truck was coming from like this. I know it hit me on this side because a little bit more, I was arriving at the other side." (pages 70 and 71);

CED Technologies, Inc.

Page 9 ~Melendez v. Volpe Dedicated, et al. ~ CED Case No.: 52126.1

38. With respect to what part of the truck hit her, "From what I remember, like the front because when I turned like this, I saw the front like high, tall, like this." (page 71);

39. "Because when he hit me, he put me like underneath the truck like this. Because that happened like fast." (page 72);

40. "I was walking along and he hit me, and that was like fast. And I went underneath the truck. ... while I was underneath the truck, my leg was hurting me a lot, and I was screaming. ... I felt like something was on my leg." (page 73);

41. When the truck knocked her down, "It's like he dragged me a little bit." (page 74);

42. With respect to how far she was dragged, "Oh, my God, I don't remember that much. I don't remember. I don't remember that because I was like screaming and my leg was hurting me a lot, and I was screaming." (page 74);

43. The truck moved away from her, "...like he moved, and then I was alone like this, and I looked and I saw the sky.: (page 75);

44. Ms. Melendez does not remember where she came to rest in the roadway. (page 76);

45. "When the truck came off of me, I was like in shock, and I saw a lot of people around me." (page 77);

46. She was taken by ambulance from the scene very quickly. (page 78);

47. Ms. Melendez never told anyone the truck turned right prior to hitting her. (page 91);

48. With respect to what part of truck dragged her, "I don't remember. All I know is I was underneath the truck. I was yelling. I was yelling, my eyes were closed, and I was screaming. I was yelling, yelling." (page 96);

**Carl Jankee** deposition provided the following:

1. Lived at 2040 Bruckner Blvd. (one block west and one block north of the intersection of Story Avenue and White Plains Road)(page 9);

2. Mr. Jankee witnessed the incident on the morning of October 24, 2012. (page 13);

3. Mr. Jankee testified; "As I entered the intersection (Story Avenue and White Plains Road) a Rite Aid truck vehicle, a truck was entering the area where the light and the intersection. As he entered the intersection he ,made a left turn, and as the left turn was being made I first visualized a trash, garbage. It looked like garbage was tumbling underneath the trailer. As the trailer moved in front of me, kept going, I realized there was an individual on the floor and that's when I got out and proceeded to help the woman." (pages 13 and 14);

4. Mr. Jankee did not speak with the truck driver. (page 14);

5. Mr. Jankee was west bound on Story Avenue. (page 15);

6. Traffic light was red, for Story Avenue, when he got to the intersection with White Plains Road. (page 18);

7. Events occurred, "Very early morning. No sunlight. It was still early in those hours being the wintertime." (page 18);

8. Lighting at the intersection, "As far as streetlights are concerned? ... Well lit." (page 19);

9. Mr. Jankee was the first car at the red light and waited about a minute for the light to turn green. While waiting for the traffic light he, "Checked my entire surroundings." (page 20);

10. While Mr. Jankee was stopped waiting for the red light he saw "... a truck coming towards me, pedestrians on the street corner of the restaurant, other vehicles on my right-hand side waiting to go north to south. Vehicles on my left-hand side." (page 20);

11. There was one vehicle behind him when he was stopped for the light. (page 21);

12. While stopped Mr. Jankee saw "More than one pedestrian." They were in different areas of the intersection, "Crosswalk. In the north lane crossing between cars. Crosswalk between cars." (page 21);

13. Saw two pedestrians across the intersection to his right. These were the only pedestrians at the intersection. (page 22);

14. Mr. Jankee agrees with council that the only pedestrians he saw were on the northeast(sic) (actually northwest) corner of the intersection. The pedestrians were standing there the entire time he was stopped for the light. (page 23);

15. The truck he saw while he was waiting for the red light was coming eastbound on Story Avenue. "You can see it being a tractor trailer and you can also hear it." (page 24);

16. The weather was cold and clear. (page 24);

17. "I had my driver's side window cracked just at the top." (page 25);

18. Mr. Jankee he saw the approaching tractor trailer the entire time he was approaching the light on Story at White Plains. (page 25);

19. "At the second stop sign in the parking lot area I did not see him yet, but after the stop sign and I'm coming up to the light, that's when I start to see him coming." (page 25);

20. Mr. Jankee arrived at the traffic light before the truck. (page 26);

21. As Mr. Jankee waited at the red light he saw a few cars traveling on White Plains Road, but he did not see any trucks or buses on White Plains. (page 26 and 27);

22. While stopped for the red light, Mr. Jankee indicated "As I was checking my surroundings when I was at the light I looked to my right-hand side, I noticed a vehicle behind me getting ready to make the same turn I was going to make." (page 27);

23. Mr. Jankee had seen other Rite Aid trucks in the area but, "That's the first time I had seen one coming through that area coming in that direction." (page 30);

24. Mr. Jankee reached a speed of 10 to 20 mph between the stop sign in the parking area and the traffic light at White Plains. (page 32);

25. Mr. Jankee stopped his car at the stop bar on the east side of White Plains Road. (page 37);

Page 11 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

26. Mr. Jankee first saw the tractor trailer on Story Avenue in the middle of the block across White Plains Road from him. (illustrated by way of Exhibit A) (page 39);

27. When the light turned green the truck was still approaching the intersection just west of stop line, as indicated on Exhibit A box "3". (pages 39 and 40);

28. When the light turned green the two pedestrians were still on the northwest corner of the intersection. Note: the wording of testimony was the northeast corner but Exhibit A was marked on the northwest corner. (pages 40 and 41);

29. When the light turned green the pedestrians "… began moving when the light turned green because this is a walk hand sign, the walk signal on the walkway shows to walk." (page 41);

30. When the light turned green for him, "I was waiting until the truck cleared the intersection." (*page 42);

31. Mr. Jankee saw the pedestrians, "Directly next to each other. I remember I saw an individual crossing the crossway and another individual walking away from the cars…sort of (on a diagonal)." (page 43);

32. The pedestrians were wearing "Dark clothing." (page 43);

33. When the traffic light turned green for him, there were no cars in the southbound lanes of White Plains Road. (page 44);

34. Mr. Jankee saw one pedestrian "…as she was beginning the crosswalk." (page 46);

35. "The individual that made it from the – diagonally from the initial crosswalk area, she made it across the yellow line before the tractor even came into view." (page 47);

36. Mr. Jankee testified he saw the individual walking diagonally completely cross all travel lanes of White Plains Road. (page 47);

37. "They (pedestrians) were standing there together. I remember them seeing one walking off and going across and the other person standing there." (page 48);

38. Saw the pedestrian walking diagonally across White Plains Road reach the sidewalk on the east side of White Plains Road north of the crosswalk, as indicated on Exhibit A. (page 49);

39. The pedestrian that walked in the crosswalk, "I'm gonna say she was moving as the hand went up. I didn't move yet because the truck was coming." (page 50);

40. The tractor trailer was entering the intersection, making his left turn when the pedestrian began to cross. (pages 50 and 51);

41. Mr. Jankee only saw the pedestrian in the cross walk for "a couple of feet." (page 53);

42. The truck blocked his view. (page 54);

43. "The tractor was here in its turning motion as I lost visual of her as she made a few steps into the crosswalk area. … He (truck driver) was just starting his turn." (page 56);

44. Mr. Jankee began to move his vehicle when the front of the tractor was well north of the crosswalk as indicated in Exhibit A. (page 59);

45. Mr. Jankee's attention was focused on the tractor trailer after losing sight of the pedestrian. (pages 59 and 60);
46. Mr. Jankee first perceived that there was contact between the tractor trailer after it was going straight north on White Plains Road. (page 61);
47. No portion of the tractor trailer in the crosswalk when he first perceived contact. (page 62);
48. He saw "…something underneath the trailer." (page 62);
49. When he saw something under the trailer there was nothing in the crosswalk. (page 64);
50. As the tractor trailer continued to move north and Mr. Jankee began his right turn he saw "An individual on the ground." (page 66);
51. "I brought it (his car) to diagonally in front of her to block her off from any traffic coming that way. There was a vehicle behind me, so that if I didn't do that possibly would have ran over her." Marked this position in the left northbound lane of White Plains Road on Exhibit A. (page 66);
52. Mr. Jankee marked the position of the individual on ground to be next to the double yellow centerline of White Plains Road. (page 67);
53. After Mr. Jankee stopped and got out of his car, he got the truck drivers attention by waving his hands. (page 70);
54. As the truck driver walked towards Mr. Jankee he said "I didn't see her." (page 70);
55. Mr. Jankee provided assistance to pedestrian until EMS and police arrived.
56. Told police "I witnessed the guy hit the lady. I had to go to work. Here is my phone number and my ID. Take my information and I got to go.," (pages 78 and 79);
57. The reason Mr. Jankee let the tractor trailer turn before he made his turn, "I seen the tractor trailer coming. I also heard him coming and it sounded like his engine was at a high speed, so I allowed him to make the first turn because if I would have made the turn first he could have clipped me to the effect of damaging my vehicle." (page 85);
58. With regard to Ms. Melendez's injuries, Mr. Jankee testified, "She was laying on the floor. Her leg was twisted in one direction. Her left leg was twisted in one direction. Right leg the other. I didn't see the pool of blood open up until I turned around from the police call. As I was making the call I was looking around me. When I looked back down at her I seen the pool of blood opening up as the lady in the blue scrub was working on her. …It seemed like a nice size puddle." (page 86);
59. "Q. You said before that the area was lit. It was well lit, I think you said?
A. Yeah. The streetlights were all on." (page 87);
60. Mr. Jankee saw Ms. Melendez contact the trailer but "I don't believe there was any contact with the tractor." (page 87);
61. Mr. Jankee could not see any contact with the tractor if it occurred. (page 88)

**Ofc. Charesse Davis** deposition provided the following

1. Ofc. Davis was on patrol with Ofc. O'Dwyer. (page 10);
2. Responded to the scene for a pedestrian being struck. (page 20);
3. "When I got there I saw a truck.  I saw a lady laying on the floor.  I saw the driver of the truck and then I saw a witness." (page 21);
4. Pedestrian on the ground, "They were not a Story in the crosswalk, but further up from the crosswalk." (page 25);
5. Ofc. O'Dwyer drove them to the scene. (page 30);
6. Before she got out of the police car, she spoke with the truck driver and a witness. (page 31);
7. Truck driver told her "…he just came from making a delivery at the Rite Aid over there.  He said he came out and he made a turn onto Story Avenue and then as he went to make a turn from Story Avenue to White Plains Road." (page 35);
8. Ofc. Davis did not recall if he told her if he made a left or a right onto White Plains Road. (page 35);
9. After Ofc. Davis got all the information she needed from the truck driver she told him he could be on his way. (page 37);
10. Ofc. Davis indicated the witness told her, "…he saw the truck making a turn onto White Plains Road and he said he saw the truck hit the lady." (page 38);
11. Ofc. Davis did not recall if the witness indicated the truck turned right or left or if the pedestrian was in or out of the crosswalk. (page 38);
12. Ofc. Davis indicated "I never came to any conclusion.  I just wrote the report out and I just saw her there.  I don't know how she got there.  I don't know where she was coming from.  I don't know what direction she was walking in." (page 44);
13. Ofc. Davis indicated the truck driver told her that the pedestrian crossed in the middle of the street. (page 46);
14. Tractor trailer was stopped in the bus lane when Ofc. Davis arrived on scene. (page 58);
15. Ofc. Davis indicated pedestrian was laying in lane 2. (page 72);
16. Ofc. Davis' recall of where the pedestrian was laying was different than what the truck driver indicated. (page 80);
17. Ofc. Davis wrote in her report, "At TPO driver of vehicle 1 states he was driving westbound on Story Avenue and while attempting to make a right turn onto White Plains Road he cleared intersection and proceeded to turn when pedestrian crossed in the middle of the street." (page 82 and 83);
18. Ofc. Davis did not write down what the witness (Jankee) told her.  (page 89);

**Ofc. Sean O'Dwyer** deposition provided the following

1. On October 24, 2012 he was partnered with Ofc. Davis. (page 7);

Page 14 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

2. Responded to a 53 (pedestrian accident) at Story Avenue and White Plains Road. (page 8);
3. When Ofc. O'Dwyer arrived on scene he observed "A tractor trailer and a pedestrian." (page 13);
4. Pedestrian was north of the intersection in the road. (page 13);
5. Ofc. O'Dwyer moved people away from pedestrian then directed traffic. (page 16);
6. Did not speak to witness or truck driver. (page 17);
7. He did not attend to pedestrian or anyone about how the incident happened. (page 20);
8. Ofc. O'Dwyer does not recall seeing blood at the scene. (page 25);
9. "Officer Davis is the recording officer. She does the paperwork so she is going to do the investigating." (page 26);
10. He was directing traffic. (page 26);

**Blair Buskirk** deposition provided the following

1. He is the manager for Volpe Dedicated. (page 5);
2. Chris Prince handled matters related to drivers. (page 20);
3. Trucks are tracked with an Agilis GPS tracking system using a cell phone in each tractor. (pages 27 and 28);
4. Mr. Prince did the investigation and handling of Mr. Rodriguez incident with a pedestrian. (page 34);

**Christopher Prince** deposition provided the following

1. He was the Director of Safety for Volpe. (page 4);
2. Received a phone call about the incident in the early morning hours. (page 25);
3. "The dispatcher notified me that there had been an accident with a pedestrian. He gave me the location and I inquired what was the condition of the pedestrian. He said he did not know. I asked as to the condition of the driver, he said the driver was okay. He said they're in the middle of a police report and that they were more than likely going to transport the pedestrian away from the scene." (page 28);
4. Truck has a hand held cell phone device that gives the trucks GPS location. (page 33);
5. He did not speak to witness as part of an investigation. (page 65).

**Angel David Ayala** and **Corey Tillery** depositions provided the following:

1. They are both Paramedics from Station 20;
2. They were partnered on shift 2 on October 24, 2012;

Page 15 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

3. Upon arrival at scene Ms. Melendez had already been placed in an ambulance by EMTs from Station 20;
4. They entered the ambulance and rode to hospital with Ms. Melendez;
5. No useful information related to the actual incident or the initial rest position of Ms. Melendez.

## Agilis GPS Documents

Volpe Dedicated utilized a GPS tracking system to determine the locations of its truck. The system is provided through Agilis Systems, St. Louis, MO. The tracking is provided via a cellular phone located and assigned to each Volpe tractor. The phone sends GPS latitude and longitude positioning data at pre-determined time intervals. The phones have no interface with the tractor to provide any data. The information provided by the system is: GPS position (lat/long), GPS time and date, vehicle speed (calculated from GPS positions), vehicle (really the phone) direction of travel (GPS calculated). The software utilized by Volpe Dedicated provides this information in a spreadsheet format, apportion of which is shown in Figure 2.

| Device | First Name | Last Name | Date | Location | Speed | Direction | Latitude | Longitude |
|--------|-----------|-----------|------|----------|-------|-----------|----------|-----------|
| 2679979058 | 443 | 9058 | 10/24/2012 04:01 AM | Google Maps Link | 60mph | NE | 40.6044 | -74.2279 |
| 2679979058 | 443 | 9058 | 10/24/2012 04:04 AM | Google Maps Link | 57mph | NE | 40.6469 | -74.202 |
| 2679979058 | 443 | 9058 | 10/24/2012 04:07 AM | Google Maps Link | 64mph | NE | 40.6848 | -74.1655 |
| 2679979058 | 443 | 9058 | 10/24/2012 04:10 AM | Google Maps Link | 64mph | N | 40.7225 | -74.1344 |
| 2679979058 | 443 | 9058 | 10/24/2012 04:13 AM | Google Maps Link | 64mph | NE | 40.7629 | -74.1125 |
| 2679979058 | 443 | 9058 | 10/24/2012 04:16 AM | Google Maps Link | 60mph | NE | 40.7994 | -74.0762 |
| 2679979058 | 443 | 9058 | 10/24/2012 04:19 AM | Google Maps Link | 55mph | NE | 40.8255 | -74.0309 |

Figure 2 – Agilis GPS Data. Control + Click on blue hyperlink will bring up the location on Google Maps.

The GPS data shows that Mr. Rodriguez truck was first at the accident scene at 6:27 a.m. Similarly the data indicated that Mr. Rodriguez had left the accident scene on his way to his Morris Park Rite Aid delivery at 6:52 a.m.

The system also generates a Stop Report giving the time, duration and location of vehicle stops. Figure 3 is the Stop report for Mr. Rodriguez tractor on October 24, 2012. The stop report indicated Mr. Rodriguez was at 924 White Plains Road for 23 minutes, 6:27 to 6:51 a.m. This stop and location correlated to the accident scene.

| Device | First Name | Last Name | Begin Date | End Date | Duration | Google Maps |
|--------|-----------|-----------|------------|----------|----------|-------------|
| 2679979058 | 443 | 9058 | 10/24/2012 04:38 AM | 10/24/2012 06:26 AM | 1 h 48 mins | 1963 TURNBULL AVE, BRONX |
| 2679979058 | 443 | 9058 | 10/24/2012 06:27 AM | 10/24/2012 06:51 AM | 23 mins | 924 WHITE PLAINS RD, BRONX |
| 2679979058 | 443 | 9058 | 10/24/2012 06:59 AM | 10/24/2012 08:48 AM | 1 h 49 mins | 910 MORRIS PARK AVE, BRONX |
| 2679979058 | 443 | 9058 | 10/24/2012 08:49 AM | 10/24/2012 08:55 AM | 6 mins | 844 MORRIS PARK AVE, BRONX |
| 2679979058 | 443 | 9058 | 10/24/2012 09:09 AM | 10/24/2012 10:03 AM | 54 mins | 680 E TREMONT AVE, BRONX |

CED Technologies, Inc.

Page 16 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

| 2679979058 | 443 | 9058 | 10/24/2012 11:47 AM | 10/24/2012 12:38 PM | 50 mins | 249 PLAZA BLVD, MORRISVILLE |
| 2679979058 | 443 | 9058 | 10/24/2012 12:44 PM | 10/24/2012 12:52 PM | 8 mins | ROCK RUN RD, FAIRLESS HILLS |

Figure 3 – Agilis Stop Report

CED utilized the GPS information to create a map showing the various locations of Mr. Rodriguez tractor from a position on the New Jersey Turnpike and back, including his travel in the Bronx making his three stops. Figure 4 provides this mapping.



Figure 4 – GPS positions for Mr. Rodriguez truck 10/24/2012.

**Rodriguez and Volpe Express Phone Records**

Mr. Rodriguez personal phone records for October 24 were reviewed. A comparison of the time of the calls with the GPS records indicated that there were outgoing calls during Mr. Rodriguez delivery stop at the Turnbull Avenue (Bruckner Plaza Rite Aid). The first of these calls was at 4:46 a.m. to the Rite Aid store, and the last was at 6:17 a.m. again to the Rite Aid store. The next call was outgoing at 6:27 a.m. (Police listed accident time as 6:26 am) to (215) 337-9957, Volpe Express. The next outgoing call was after Mr. Rodriguez arrived at his Morris Park Rite Aid delivery stop.

The Volpe Express phone records listed 4 calls for October 24. These calls were all outgoing to Volpe Express. These calls were placed between 8:00 a.m. and 10:00 a.m.

CED Technologies, Inc.

Page 17 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

### CED Truck Inspection

On November 13, 2012, Mr. Peter Chen inspected the incident tractor and trailer at the Volpe facility in Fairless Hills, PA. This inspection was documented with 241 photographs one "walk around" video, notes and measurements. This data was utilized by Mr. Miller during his investigation.

### CED Scene Visits

On February 25, 2013, CED (Robert Miller) visited the scene of the incident, Story Avenue and White Plains Road, Bronx, NY. This scene visit was documented with 18 photographs and two videos (previously provided). One of the videos was from Mr. Miller's car (2006 Acura TL) showing a drive around the block immediately to the west of White Plains Road and south of Story Avenue. The purpose of this drive around was to show a possible route to be taken by Mr. Rodriguez, after his delivery to the Bruckner Plaza Rite Aid. This route would result in his truck traveling east on Story Avenue on the west side of White Plains Road and making a left turn to go north. The second video was taken looking west from the northeast corner of White Plains Road/Story Avenue intersection, documenting the pedestrian signal for the north cross walk across White Plains Road at Story Avenue.

A second site visit was made by Mr. Miller on May 31, 2013. The purpose of this site visit was to video a drive from the Rite Aid at Bruckner Plaza and go around the block as described above utilizing the tractor (#443) and an exemplar t48 foot trailer. Additionally, a right turn by the truck from westbound Story Avenue to northbound White Plains Road was video documented. Two additional videos were taken to document the traffic signal timing at the intersection. During this site visit 33 photographs were taken. The 4 videos and 33 photographs were previously provided. It was observed by Mr. Miller, that the forward view, from the driver seat of the tractor 443, was unobstructed except for the area close to the front of the truck.

During both site visits by CED, Robert Miller, there were no permanent obstructions which would block a stopped, lead driver's field of view of the northwest corner of the intersection or the north crosswalk from westbound Story Avenue stop line on the east side of White Plains.

### Scene Photographs taken 10/24/2012

CED was provided with photographs that were taken at the incident scene at/near the time of the incident. These photographs, Exhibits P-49 through P-63 show people around Ms. Melendez in the left northbound lane of White Plains Road, Exhibits P-49 (lower photograph), P-52 and P-58. Photographs P-53, P-54, P-55, P-56, and P-57, all show debris from EMS working on Ms. Melendez prior to being transported. This debris is in the left northbound

Page 18 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

lane of White Plains Road. There is no photographic evidence that shows Ms. Melendez in or near the north crosswalk crossing White Plains Road at Story Avenue.

In Exhibit Numbers P-53, P-54, P-56, P-57, P-59 and P-60 all show an area which represents a "blood pool". The blood identified during Mr. Rodriguez deposition was not "pools" of blood as described by Mr. Jankee. In P-56 the "blood pool" appears red due to the reflection of the ambulance emergency lights. There is no photographic or testimonial evidence that there was a blood trail that would be consistent with Ms. Melendez being dragged from the crosswalk to the photographed point of rest.

**Commercial Driver's Manuals**

Both the Pennsylvania and New York Commercial Driver's Manuals contain a section related to "Seeing" (Section 2.4). Within this section of the manuals there is a sub-section 2.4.2 – Seeing to the Sides and Rear. This sub-section stresses the use of mirrors.
- "It is important to know what is going on behind and to the sides. Check your mirrors regularly. Check more often in special situations."
- "**Regular Checks.** You need to make regular checks of your mirrors to be aware of traffic and to check your vehicle."
- "**Special Situations.** Special situations require more than regular mirror checks. These are lane changes, turns, merges, and tight maneuvers."
- "**Turns.** In turns, check your mirrors to make sure the rear of your vehicle will not hit anything."

**CED Analysis**

CED performed an analysis of the various descriptions of the events, as testified to by Ms. Melendez, Mr. Rodriguez and Mr. Jankee. This analysis was performed utilizing ARAS HD software. Using this software, Mr. Miller created 3D image of the intersection, overlaid on a Google Earth image of the intersection, Figure 5.

Utilizing the intersection in Figure 5, CED created each of the scenarios described in depositions by; Ms. Melendez, Mr. Rodriguez and Mr. Jankee.

**Melendez Scenario**

From the testimony of Ms. Melendez, she described her route from her home to the incident scene. Ms. Melendez approached the scene in an eastbound direction on the south sidewalk of Story Avenue. When she reached White Plains Road, after a delay, she crossed Story Road walking north in the west crosswalk. Once on the northwest corner of the intersection, Ms. Melendez indicated she had to wait for the green light before she could cross White Plains Road. Ms. Melendez indicated she was alone on the corner while she waited to cross White Plains. Ms. Melendez indicated that she did not see or hear the truck driven by

Page 19 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1



Figure 5 – ARAS HD intersection.  White Plains lower right to upper left, Story lower left to upper right.

Mr. Rodriguez.  However on page 53 of her deposition, Ms. Melendez testified with respect to the trucks approach, "Not from the right or the left, but from the other side. … From this side of Story." (page 53).  Ms. Melendez stated that she was impacted by the truck on her right side and was knocked down and went underneath the truck.  While under the truck she was screaming and yelling and she felt something on her leg.  Ms. Melendez also stated that she was dragged a short distance but did not know what part of the truck dragged her.  Ms. Melendez did not recall where she came to rest after the truck passed over her. Figure 6.



Figure 6 –Melendez Scenario

**Rodriguez Scenario**

From the testimony of Mr. Rodriguez, he indicated that he made a left turn onto Story Avenue after making his Bruckner Plaza Rite Aid delivery.  Mr. Rodriguez was traveling

Page 20 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

westbound on Story Avenue and saw the traffic light at White Plains Road turn red. When Mr. Rodriguez reached White Plains Road, he stopped his truck to wait for a green signal to make a right turn onto White Plains Road northbound. Mr. Rodriguez indicated that there was a car behind him at the red light. While Mr. Rodriguez was stopped he observed a few vehicles traveling from his left to right on White Plains Road including a school bus. The school bus stopped in the intersection and ultimately made a left turn onto westbound Story Avenue. Mr. Rodriguez also saw an MTA bus southbound on White Plains Road which stopped for a red light at Story Avenue. Mr. Rodriguez did not see any pedestrians on the northwest corner of the intersection or in the crosswalk on the north side of the Story crossing White Plains. Additionally, Mr. Rodriguez did not see any pedestrians on the west sidewalk of White Plains, ahead of or behind the stopped MTA bus. Mr. Rodriguez had a clear, unobstructed view of the northwest corner and the north crosswalk. If a pedestrian were on the northwest corner or in the north crosswalk, they would have been clearly visible to Mr. Rodriguez. When the light turned green for Story Avenue, Mr. Rodriguez waited for the school bus to complete its left turn before he began to execute his right turn. As Mr. Rodriguez was completing his turn, he checked his right side rear view mirror to ensure he had cleared the sidewalk at the NE corner of the intersection. Mr. Rodriguez then looked forward and he saw something in his left (driver side) upper outside mirror and did not know what it was. Mr. Rodriguez stopped his truck, exited the tractor and began to walk back to see what it was. Mr. Rodriguez saw a woman on her back lying in the road complaining of pain in her leg.



Figure 7 –Rodriguez Scenario

**Jankee Scenario**

Mr. Jankee testified that he observed a Rite Aid tractor trailer approaching the intersection of White Plains Road and Story Avenue in an eastbound direction on Story Road on the west side of White Plains. Mr. Jankee made this observation as he was approaching White Plains on Story, in a westbound direction and while he was stopped for a red light at White Plains Road. Mr. Jankee was the first vehicle in line stopped for the red light. While

Page 21 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

stopped, Mr. Jankee testified that he "Checked my surroundings. Saw a truck coming towards me, pedestrians on the street corner of the restaurant, other vehicles on my right-hand side waiting to go north to south. Vehicles on my left-hand side." Additionally, Mr. Jankee indicated there was a car behind him. With respect to the approaching truck, Mr. Jankee indicated "You can see it being a tractor trailer and you can also hear it. ... I had my driver's side window cracked just at the top." The pedestrians (2) observed by Mr. Jankee were on the northwest corner of the intersection. When the light turned green, Mr. Jankee observed the pedestrians crossing White Plains Road, one in the crosswalk and the other "In the north lane crossing between cars." Mr. Jankee testified that he did not begin his right turn due to the left turning Rite Aid truck, which had entered the intersection. Mr. Jankee lost sight of the pedestrian in the crosswalk but observed the pedestrian that was north of the crosswalk reach the east sidewalk along White Plains Road. Mr. Jankee indicated that he observed what he thought was garbage, tumbling under the trailer of Mr. Rodriguez truck. Mr. Jankee testified that he did not make this observation until the truck was straight going north bound on White Plains Road. Additionally, Mr. Jankee indicated the truck was clear of the crosswalk at the time of his observation of the garbage. After Mr. Rodriguez's truck passed over the garbage, Mr. Jankee realized it was actually a person.



Figure 8 –Jankee Scenario

**ARAS HD Analysis**

The ARAS HD software provided an accurate representation of the tractor trailer off-tracking while making a left or right turn. This was important to the analysis when taking into account the rest position of Ms. Melendez. In the Jankee scenario, Mr. Rodriguez would have to turn wide left in order to keep his trailer clear of the stopped southbound vehicles. Due to the off tracking, this would place the front of the tractor crossing the crosswalk in a northeasterly direction. A wide left turn would permit the tractor and trailer straightening out in the right hand lane of northbound White Plains Road. If Ms. Melendez was correct that she was hit by the front of the tractor, this scenario would be inconsistent with the rest position of

Page 22 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

Ms. Melendez in lane 1 near the double yellow centerline. Additionally, Ms. Melendez would have been run over by the tractor drive wheels due to the off tracking.

Mr. Rodriguez testified that he made a right turn from westbound Story Avenue to northbound White Plains Road. This was consistent with Ms. Melendez's recollection that the truck came from Story Avenue on the east side of the intersection (Melendez deposition page 53). Mr. Rodriguez stated that his tractor went into half of the left northbound lane of White Plains Road. This would be necessary to keep the trailer right side wheels from encroaching on the curbing and sidewalk on the northeast corner of the intersection. The final portion of this wide right turn would have the tractor reenter the right lane; straighten out the tractor and the trailer to proceed north. Again, if Ms. Melendez is correct that she was hit by the front of the tractor, her resting position, at or near the double yellow centerline, would be consistent with a wide right turn. In this scenario, it would be unlikely that Ms. Melendez would have gone under the rear of the trailer due to the trailer off-tracking.

Discussion

The police documentation of this accident did not indicate any measurements of the rest position of Ms. Melendez. Mr. Rodriguez testified (Rodriguez deposition page 125) that he measured the rest position of Ms. Melendez, with his feet, after she was transported by the ambulance. Mr. Rodriguez stated that the distance was 27 to 30 feet from the intersection. Additionally, there was no attempt made to try to determine the initial point of impact (POI) of the truck and the right side of Ms. Melendez. There also was no indication that the police saw or tried to determine if Ms. Melendez was dragged by the truck post-impact. Both Mr. Rodriguez and Ms. Melendez have testified that they did not see each other prior to impact. Ms. Melendez, however, testified that the truck came "Not from the right or the left, but from the other side. … From this side of Story." (Melendez deposition page 53). That being said, Ms. Melendez and Mr. Rodriguez are in agreement about the movement of the truck, pre-impact, turning right to go north on White Plains Road from westbound Story Avenue.

Ms. Melendez testified that she did not see or hear the truck prior to being struck on her right side by the front of the tractor. Ms. Melendez however, did testify (Melendez deposition page 53) that the truck came "Not from the right or the left, but from the other side. … From this side of Story." This is consistent with Mr. Rodriguez testimony with regard to making a right turn from Story onto northbound White Plains. After being knocked down by the truck, Ms. Melendez stated that "It's like he dragged me a little bit." (Melendez deposition page 74). Ms. Melendez could not say where she came to rest. Ms. Melendez recalled being knocked down and going underneath the truck and her leg hurting and that she was screaming and yelling.

The scene photographic evidence clearly shows Ms. Melendez's position in the left northbound lane of White Plains when she was on the ground and being attended to. Additionally, there are photographs showing the same area, after Ms. Melendez had been

Page 23 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

transported from the scene. The photographed position is inconsistent with Mr. Jankee's recollections of the incident. In the position shown in the photographs, the truck could not have struck Ms. Melendez and Ms. Melendez go underneath the truck and come to rest in this position if the truck made a left turn from eastbound Story Avenue. However, Mr. Jankee's description of one pedestrian walking diagonally across White Plains Road north of the crosswalk would be consistent with that pedestrian being struck by a right turning truck and coming to rest 27 to 30 feet north of the intersection.

Ms. Melendez has also testified that she did not see or hear the Rodriguez truck prior to impact. However, Mr. Jankee testified he heard the truck from inside his car with only the driver's window "cracked at the top." There was nothing in the materials, reviewed by CED, to suggest a reason why Ms. Melendez did not see or hear the truck. It must also be pointed out that if Ms. Melendez was on the northwest corner of the intersection and walked east in the north crosswalk across White Plains, there would be no permanent visibility obstructions preventing her from seeing Mr. Rodriguez's truck.

Mr. Rodriguez has testified that he did not see anyone on the northwest corner of the intersection, the west sidewalk in front of or behind the stopped MTA bus or in the north crosswalk. The intersection was described by Mr. Jankee as being well lit and Mr. Rodriguez indicated he could see objects in and around the intersection. Mr. Rodriguez had a clear unobstructed view of the northwest corner of the intersection and the north crosswalk between the northwest and northeast corners of the intersection. Prior to starting his right turn, Mr. Rodriguez would have been looking forward through his windshield, at the northwest corner and the crosswalk. There would not be any blind spot within Mr. Rodriguez's forward field of view except very close to the front of the truck, due to the hood.

Prior to turning right Mr. Rodriguez had a clear and unobstructed view of the northwest corner of the intersection as well as the north crosswalk crossing White Plains. Mr. Rodriguez testified "I saw nothing in the middle of the street and there was nothing." In his statement, Mr. Rodriguez indicated "Following that right turn I looked over the right side mirror to make sure everything was good with my trailer while I was making that right turn." When Mr. Rodriguez's tractor was more than 30 feet north of the intersection, Mr. Rodriguez saw something in his driver side upper rearview mirror. As a result, Mr. Rodriguez stopped his truck and he exited the tractor. As Mr. Rodriguez walk back from his tractor, "I saw a person on the ground and he was complaining that he had a pain in his leg. ...It was a woman. ...She was her back facing the ground." The diagram drawn by Mr. Rodriguez (Exhibits P-1 and P-39), provided with his written statement, placed Ms. Melendez at or on the double yellow center line of White Plains Road, in the left northbound lane (lane 1). Mr. Rodriguez testified that at no time prior to or during his turn did he see Ms. Melendez until he saw something in his left rearview mirror. Mr. Rodriguez's clear and unobstructed view would have afforded him the ability to see a pedestrian if they were present on the northwest corner or within the north crosswalk.

CED Technologies, Inc.

Page 24 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

During the execution of Mr. Rodriguez's right turn, Mr. Rodriguez testified that he looked in his right rear view mirror to check that his trailer would/had cleared the curbing and sidewalk at the northeast corner of the intersection.  Looking in rear view mirrors during a turning maneuver is called for by both the Pennsylvania and New York Commercial Driver Manuals.  Mr. Rodriguez then looked back forward and in his left rear view mirror, at which time he saw something.  The use of rear view mirrors requires a driver to look away from the road ahead.   This action is what is required of drivers of large commercial vehicles, as addressed in the Driver Manuals.

The witness, Mr. Jankee, indicated that he was the first car stopped on westbound Story at the red traffic light at the intersection with White Plains.  Mr. Jankee testified that when he first saw something the oncoming, left turning truck had cleared the north crosswalk and that what he saw was "garbage" tumbling under the trailer.  It was after his first view that Mr. Jankee realized the "garbage" was a person.   The fact that Mr. Rodriguez did not see a pedestrian on the northwest corner or in the crosswalk, when he had a clear, unobstructed view, does not rule out Ms. Melendez attempting to cross White Plain Road north of the crosswalk, jaywalking.  Additionally, Mr. Jankee did not see anything until the whole truck was north of the crosswalk.  Mr. Jankee indicated that he saw "garbage" tumbling under the trailer.  Mr. Jankee did not indicate that any of the trucks tires ran over the object which he saw tumbling under the trailer.  In a left turn, considering the trailer off tracking, it is unlikely that the trailer tires would not run over that which was tumbling under the trailer

The photographs taken at the scene indicated that Ms. Melendez was lying on the road north of the crosswalk and in the left side of the left northbound lane of White Plains Road.  The area shown in the photographs is consistent with Mr. Rodriguez making a wide right turn from Story Avenue to White Plains Road and not having seen Ms. Melendez in his clear, unobstructed field of view of the northwest corner and the north crosswalk.  Additionally, the rest position of Ms. Melendez would be consistent with crossing White Plains Road north of the crosswalk, jaywalking.  Mr. Jankee testified that he had seen a pedestrian cross White Plains Road diagonally, north of the crosswalk.

Ms. Melendez testified that she was dragged by the truck after being knocked down, "It's like he dragged me a little bit." (Melendez deposition page 74).  Although "a little bit" was not defined during her deposition, the stepped off distance "measured" by Mr. Rodriguez of 27 to 30 feet (Rodriguez deposition page 125) would be inconsistent with being dragged "a little bit".  If Ms. Melendez was dragged under the truck from the cross walk to a position 27 to 30 feet north, one would expect that there would be significant road rash injuries to any exposed flesh and that there would be physical evidence on the road surface of the dragging.

Page 25 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

## Conclusions

Based on, but limited to, the materials reviewed (listed herein), the CED site visits and inspections, CED (Robert Miller) has concluded, to a reasonable degree of accident reconstruction and engineering certainty, that:

1. After stopping for a red traffic light Mr. Gerardo Rodriguez, driving his tractor trailer truck, made a right turn from westbound Story Avenue to northbound White Plains Road.
2. Mr. Rodriguez had a clear and unobstructed view of the northwest corner of the intersection and the north crosswalk, across White Plains, while stopped at the red light.
3. There would be nothing preventing Mr. Rodriguez from seeing a pedestrian on the northwest corner or in the north crosswalk if a pedestrian were there to be seen.
4. Ms. Melendez was crossing from the west side of White Plains Road to the east side of White Plains Road with intentions of going to the bus stop on the east side, mid-block, north of Story Avenue.
5. Ms. Melendez did not see or hear Mr. Rodriguez's truck prior to impact.
6. Mr. Rodriguez truck was clearly visible and loud enough for Ms. Melendez to have seen or heard the right turning truck.
7. Ms. Melendez failed to keep a lookout for approaching traffic as she attempted to cross White Plains.
8. There is no documented or photographic evidence that Ms. Melendez was dragged by the truck from the crosswalk to her position of rest 27 to 30 feet from the intersection.
9. There is no physical evidence to support Mr. Jankee's claim the Mr. Rodriguez made a left turn from eastbound Story Avenue.
10. Mr. Rodriguez use of his right rear view mirror, during the execution of his right turn, was an action that is specifically expected of professional drivers of large commercial vehicles.
11. Mr. Rodriguez actions during his right turn were reasonable and consistent with requirements of the Commercial Driver Manuals.
12. Ms. Melendez was struck north of the crosswalk by Mr. Rodriguez's wide right turning tractor's left front.

Page 26 –Melendez v. Volpe Dedicated, et al. – CED Case No.: 52126.1

If there are any questions about the content of this report, please call our offices.

Very truly yours,

**CED Technologies, Inc.**

Submitted by:                                    Reviewed by:

R.L. Miller, M.S.M.E.                        Anthony Bocchichio
Certified Accident Reconstructionist       Certified Accident Reconstructionist.

**CED Technologies, Inc.**