NAPOLI BERN RIPKA SHKOLNIK, LLP
Joseph P. Napoli (JP9195)
Attorneys for Plaintiff
350 Fifth Avenue, Suite 7413
New York, New York 10022
(212) 267-3700

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
FELICITA MELENDEZ,

                 CIVIL NO.: 12-CV-8846 (PKC)

      Plaintiff,

 vs.

GERARDO RODRIGUEZ, VOLPE DEDICATED,
INC., and RITE AID HEADQUARTERS CORP.,

      Defendants.

----------------------------------------------------------------X


PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF HER SECOND MOTION IN LIMINE


*Of Counsel*             Napoli Bern Ripka Shkolnik, LLP
 Joseph P. Napoli          *Attorneys for Plaintiff*
                 350 Fifth Avenue, Suite 7413
                 New York, New York  10118
                 (212) 267-3700

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

SUMMARY OF ARGUMENT ......................................................................................... 1

STATEMENT OF THE CASE .......................................................................................... 2

 A. Factual Background ............................................................................... 2

 B. Procedural History ................................................................................. 2

 C. Summary of Challenged Evidence .......................................................... 3

ARGUMENT ..................................................................................................................... 4

 THE VOLPE DEFENDANTS' FAILURE TO MAKE A FULL AND
 COMPLETE DISCLOSURE OF GALBREATH'S OPINION
 TESTIMONY WARRANTS ITS PRECLUSION ....................................... 4

 ANY OPINION GALBREATH ARRIVED AT BY REFERENCE TO
 THE ANIMATIONS IS INADMISSIBLE ................................................... 5

  A. Expert Opinion May Only Be Offered Through Qualified Witnesses
   Who Have Applied Reliable Principles And Methods To Sufficient
   Facts Or Data. ......................................................................................... 5

  B. Galbreath Has No Qualifications Whatsoever To Opine As An Expert
   On Matters Involving Accident Reconstruction. ..................................... 7

  C. The Basis Of Galbreath's Opinions Is Nonexistent ................................ 7

 THE ANIMATIONS THEMSELVES ARE INADMISSIBLE AND
 THEIR USE AS EXHIBITS WOULD BE IMPROPER ............................... 9

  A. Miller's Crude Animations Are So Different From The Events They
   Purport To Depict That They Should Be Excluded From Evidence. ..... 9

  B. As Re-Enactments Of Deposition Testimony, The Animations Would
   Not Aid The Jury In Understanding The Testimony Of Any Expert
   Witness, And Their Use As Demonstrative Exhibits Would Be
   Improper. ............................................................................................... 10

CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

## CASES

*Barnes v. General Motors Corp.*,
  547 F.2d 275 (5th Cir. 1977) ................................................................................ 9

*Colgan Air, Inc. v. Raytheon Aircraft Co.*,
  535 F.Supp.2d 580 (E.D. VA 2008) .................................................................... 10

*Cordero v. Stop and Shop Supermarket Co.*,
  No. 11 Civ. 5701 (BSJ), 2012 WL 5951280 (S.D.N.Y. 2012) ................................ 9

*Datskow v. Teledyne Continental Motors Aircraft Products, a Div. of Teledyne Industries, Inc.*,
  826 F. Supp 677 (W.D.N.Y. 1993) ........................................................................ 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ......................................................................................... 5, 6

*Gicla v. U.S.*,
  572 F.3d 407 (7th Cir. 2009) ................................................................................ 4

*Guild v. Gen. Motors Corp.*,
  53 F.Supp.2d 363 (W.D.N.Y. 1999) ..................................................................... 9

*Hutchinson v. Groskin*,
  927 F.2d 722 (2d Cir. 1991) ................................................................................. 8

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999) ......................................................................................... 6, 7

*Lobel v. American Airlines*,
  205 F.2d 927 (2d. Cir. 1953) ................................................................................ 9

*Meyers v. National R.R. Passenger Corp (Amtrak)*,
  619 F.3d 729 (7th Cir. 2010) ................................................................................ 4

*Rotman v. Progressive Ins. Co.*,
  2013 WL 329351 (D. Vt. 2013) ............................................................................ 8

*U.S. v. Johnson*,
  587 F.3d 625, (4th Cir. 2009) ............................................................................... 8

*U.S. v. Lundy*,
  809 F.2d 392 ......................................................................................................... 8

## OTHER AUTHORITIES

Advisory Committee's Note, Fed. R. Evid. 703 ........................................................ 9

## RULES

Fed R. Civ. P. 37 .................................................................................................................. 4

Fed. R. Civ. P. 26 ................................................................................................................. 4

Fed. R. Evid. 104(a) ............................................................................................................. 6

Fed. R. Evid. 401 ................................................................................................................. 9

Fed. R. Evid. 402 ................................................................................................................. 9

Fed. R. Evid. 611 ............................................................................................................... 10

Fed. R. Evid. 702 ........................................................................................................ 4, 5, 6

Fed. R. Evid. 703 ................................................................................................................. 9

## TREATISES

2 *McCormick on Evidence* (6th ed. 2006) ...................................................................... 10

Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary* (2007 Edition) .............................................................................................. 4

## PRELIMINARY STATEMENT

Plaintiff, by and through her attorneys Napoli Bern Ripka Shkolnik, hereby moves this Court, pursuant to Federal Rules of Civil Procedure 26 and 37, and Federal Rules of Evidence 104, 401, 402, 403, 611, 702, and 703 for an Order:

(1) Precluding the testimony of defendants GERARDO RODRIGUEZ and VOLPE DEDICATED, INC.'s (hereinafter collectively the "Volpe Defendants") proffered expert witness in matters of transportation safety, Kevin Galbreath; and

(2) Precluding the use of three computer-generated animations created by Robert Miller, the Volpe Defendants' proffered accident reconstruction expert, as evidence or demonstrative exhibits.

## SUMMARY OF ARGUMENT

The Volpe Defendants' Notice of Exchange did not include a supplemental report setting forth the complete basis of Galbreath's opinion testimony regarding the three computer-generated animations. Accordingly, it was deficient and his opinions as to the animations are inadmissible. Furthermore, Galbreath lacks any education, training, experience, skill, or knowledge pertinent to accident reconstruction. Such being the case, he would have had to rely solely on the animations themselves and nonexistent principles and methods in order to base his opinions on them. Plaintiff further contends that the animations themselves are unreliable and are not accurate representations of the testimony they purport to re-create. It follows that the use of those animations as exhibits would not make the examination of Galbreath or any other witness an effective procedure for determining the truth of matters at issue in this case, and that their prejudicial effect will substantially outweigh their minimal probative value to the jury. This Memorandum of Law and attached supporting exhibits are respectfully submitted in support of Plaintiff's motion.

## STATEMENT OF THE CASE

### A. Factual Background

This suit arises from an incident that occurred on October 24, 2012, in which a commercial motor vehicle struck and dragged a lawful pedestrian, the Plaintiff, FELICITA MELENDEZ, causing her to suffer catastrophic and permanent physical injuries. The commercial motor vehicle in question was an eighteen-wheeled tractor-trailer. It was controlled and operated by defendants GERARDO RODRIGUEZ and VOLPE DEDICATED, INC. (hereinafter "Rodriguez" and "Volpe," respectively, and collectively the "Volpe Defendants"). The accident happened as she traversed White Plains Road in the marked crosswalk near the northern border of that roadway's intersection with Story Avenue in the Bronx, New York.

### B. Procedural History

Plaintiff commenced this action in the Supreme Court of the State of New York for the County of Bronx, seeking recovery for the damages she suffered in the accident. Plaintiff's Verified Complaint alleged that the Volpe Defendants were negligent in causing the accident through, among other things, "failing to comply with the Statutes and Ordinances pertaining to vehicular traffic on the highways of New York." Plaintiff further alleges that Volpe was negligent in hiring Mr. Rodriguez and subsequently entrusting him with the tractor-trailer, in addition to "violating those statutes, ordinances, rules and regulations in such cases made and provided, of which this Court will take Judicial Notice at the time of the trial of this action." The Volpe Defendants removed the action to the Southern District of New York, where it was consolidated with a related action against Rite Aid, which leased the involved trailer and had contracted with Volpe to obtain delivery services.

Galbreath was retained as a liability expert by Rite-Aid through its counsel, Raven & Kolbe, LLP, in July, 2013. Deposition Transcript of Kenneth Galbreath ("Galbreath Tr."),

Exhibit "4" to Napoli Declaration at p 18:18-22. Rite-Aid served Galbreath's report on August 9, 2013, and Plaintiff took his deposition on August 28, 2013. Plaintiff then moved this Court to preclude or substantially limit Galbreath's testimony on September 11, 2013. *See* Plaintiff's Motion in Limine and Supporting Papers, ECF No. 31-33.

Mere hours after plaintiff's counsel concluded that motion sequence by filing her Reply Memorandum of Law in Support, ECF No. 57, the Volpe Defendants served a Notice of Exchange that disclosed their intent to have Mr. Galbreath testify as to his opinions regarding computer animations prepared by the Volpe Defendants' accident reconstruction expert, Robert Miller (the "animations" or "Miller's animations"). That notice was exchanged at 5:11 pm on September 20, 2013, the day on which all expert disclosures in this case were due. *See* E-mails regarding Notice of Exchange ("Exchange E-mails"), Exhibit "7" to Napoli Declaration; Order of Judge P. Kevin Castel, ECF No. 26 (September 6, 2013). The Volpe Defendants did not include a supplemental report from Galbreath giving a complete statement of his opinions as to the animations, how he arrived at them, or how his original opinions were changed by having viewed those animations. This motion followed.

### C. Summary of Challenged Evidence

Since no supplemental report giving a complete statement of Galbreath's opinions was provided by the Volpe Defendants, and plaintiff has not had the opportunity to take a further deposition of Galbreath regarding them, it is impossible to determine what they are. The animations themselves are crude, computer-generated versions of Miller's interpretations of the testimony of plaintiff, Rodriguez, and eyewitness Carl Jankee.

**ARGUMENT**

**THE VOLPE DEFENDANTS' FAILURE TO MAKE A FULL
AND COMPLETE DISCLOSURE OF GALBREATH'S
OPINION TESTIMONY WARRANTS ITS PRECLUSION**

Fed. R. Civ. P. 26(a)(2) requires any party that intends to present evidence at trial under Fed. R. Evid. Rule 702, 703, or 705 to disclose the identity of any witness through whom such evidence will be presented. All such disclosures "must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony." Fed. R. Civ. P. 26(a)(2)(B). Furthermore, "[the] report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; [and] (ii) the facts or data considered by the witness in forming them." Id. "The requirement of a detailed report serves several functions. It helps the opposing party to meaningfully depose the expert; it helps the opposing party to determine its own expert needs; and it *prevents the expert from "lying in wait" with new, last-minute opinions*." Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary* §26 (2007 Edition) (emphasis added) (citing *Meyers v. National R.R. Passenger Corp (Amtrak)*, 619 F.3d 729, 734 (7th Cir. 2010); *Gicla v. U.S.*, 572 F.3d 407, 411 (7th Cir. 2009)). If additional information regarding matters included in the expert's report or in his deposition has not been made known to the other parties, then the proffering party must supplement its expert disclosure by the time its pretrial disclosures are due. Fed. R. Civ. P. 26(e). A party that fails to supplement an expert disclosure as required by Rule 26(e) is not allowed to use that witness at trial, and the court may also inform the jury of the party's failure and impose other appropriate sanctions, including prohibiting the party from supporting designated defenses. Fed R. Civ. P. 37(c)(1), *see* Fed. R. Civ. P. 37(b)(2)(A)(ii).

In this case, the Volpe Defendants' last-minute disclosure of their intent to expand the scope of their inquiry during Galbreath's testimony to include opinions based on the animations was clearly deficient, as it did not include a supplemental report from Galbreath giving a complete account of his opinions based on Miller's animations, how he arrived at those opinions, or his arguments in support of those opinions. The expert discovery phase of this case has ended, and defendants have not properly supplemented their expert witness disclosures as required by the Federal Rules. Even worse, the Volpe Defendants' exchange leaves open the possibility that Galbreath will now seek to support the opinions contained in his original report by reference to Miller's animations, without giving the plaintiff an opportunity before trial to depose Galbreath on his basis for doing so. It follows that all of Galbreath's opinions are now tainted by his and the Volpe Defendants' references to previously undisclosed bases for those opinions, which plaintiff will not get an opportunity to explore before trial. Counsel for the Volpe Defendants seems to regard this conduct as a joke, *see* Exchange E-mails, Ex. 7, but the prejudice that the plaintiff will suffer through their clear violation of the rules governing expert discovery is no laughing matter. Accordingly, this Court should preclude Galbreath from testifying, and consider imposing the additional sanctions of instructing the jury regarding the Volpe Defendants' unfair, sharp practices and/or precluding them from supporting any defenses that were based in whole or in part on Galbreath's opinions.

## ANY OPINION GALBREATH ARRIVED AT BY REFERENCE TO THE ANIMATIONS IS INADMISSIBLE

### A. Expert Opinion May Only Be Offered Through Qualified Witnesses Who Have Applied Reliable Principles And Methods To Sufficient Facts Or Data.

Fed. R. Evid. 702 provides the standards which control the admissibility of all expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993). Trial

courts make all preliminary determinations on matters of admissibility. Fed. R. Evid. 104(a). As such, they must perform a gatekeeping role in ensuring that expert testimony presented at trial pursuant is both reliable and relevant. *Daubert*, 509 U.S. at 590-91. A party seeking to offer testimony under Rule 702 bears the burden of demonstrating that: (1) the proffered expert witness is qualified by knowledge, skill, experience, training, or education; (2) his testimony is based on sufficient facts or data; (3) is the product of reliable principles and methods; and (4) the proposed expert has reliably applied those principles and methods to the facts of the case. Fed. R. Evid. 702. Notwithstanding the above criteria, the offering party must also establish that the testimony would assist the trier of fact to understand the evidence or to determine a fact in issue to establish the relevance of the testimony offered under Rule 702. *See Daubert*, 509 U.S. at 591 (requirement that testimony assist the trier of fact goes primarily to relevance).

A party that seeks the admission of expert testimony must establish each of the above elements by a preponderance of all the proof available to the trial court, regardless of whether that proof would be admissible in evidence during the trial itself. Fed R. Evid. 104(a). Accordingly, if the proponent of expert testimony fails to offer evidence satisfying its preliminary burden as to any one of the above criteria, the testimony must not be admitted. Because the potential subjects of expert testimony are so numerous and varied that the use of a finite set of criteria in a court's exercise of its gatekeeping function is not practical or wise, trial courts have wide latitude in determining how to arrive at a decision regarding whether a proffering party has established the reliability and relevance of the proposed expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-152 (1999). However, regardless of the subject of expert testimony, the trial court must ensure that the proffered expert has arrived at his

opinions through the exercise of "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152.

### B. Galbreath Has No Qualifications Whatsoever To Opine As An Expert On Matters Involving Accident Reconstruction.

Mr. Galbreath is not qualified by experience, knowledge, skill, training or education to render opinions based on animations created by an accident reconstruction expert. A review of his *Curriculum Vitae* reveals he has no degree in engineering, is not a licensed professional engineer and/or accident reconstructionist, has never worked as a police officer or other government employee in charge of using evidence to reconstruct the events that occurred during a traffic accident. *See Curriculum Vitae* of Kenneth Galbreath ("Galbreath C.V."), Exhibit "3" to Napoli Declaration. Accordingly, he has no background that qualifies him as an expert to offer any sort of opinion based on the work of an accident reconstruction specialist like Miller. It follows that he should not be allowed to offer any opinion based on Miller's animations, and defendants cannot possibly meet their burden of proof to the contrary. Since all of his opinions are now influenced, if not completely tainted, by reference to the animations, it follows that his testimony should be precluded.

### C. The Basis Of Galbreath's Opinions Is Nonexistent

Mr. Galbreath's opinions cannot possibly be based reliable principles and methods. While experts are granted wide latitude to offer their opinions not based on first-hand knowledge or observation, Galbreath is clearly not an expert in the field related to the animations; even if he were, the rationale that supports allowing such latitude "is premised on an assumption that the expert's opinion *will have a reliable basis in the knowledge and experience of his discipline*." *Daubert,* 509 U.S. at 592 (emphasis added). Without any disclosure of how Galbreath's opinions have been shaped by Miller's animations, it is impossible to say principles and methods

7

he applied in arriving at them.  However, as already demonstrated, Galbreath simply has no expert knowledge and experience that even arguably apply to animations created by an accident reconstruction specialist.  Accordingly, there is no proof before this Court that Galbreath has applied any principles and methods whatsoever in arriving at his conclusions.  Accordingly, his testimony regarding them should be precluded, as defendants cannot possibly meet their burden of showing that his testimony would be reliable.

Furthermore, the animations themselves are not sufficient facts or data to be an admissible basis of opinion testimony under Rule 702.  The Second Circuit, its District Courts, and other Courts of Appeal have long held that it is improper to use an expert merely "as a conduit for hearsay testimony."  *Rotman v. Progressive Ins. Co.*, 2013 WL 329351, *8 (D. Vt. 2013) (citing *Hutchinson v. Groskin*, 927 F.2d 722, 725 (2d Cir. 1991)); *see also, e.g.*, *U.S. v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009); *U.S. v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987).  As detailed at length in plaintiff's memorandum of law in support of her motion in limine to substantially limit Miller's testimony, the animations themselves are nothing more than crude visual summaries of the testimony of plaintiff, Rodriguez, and eyewitness Carl Jankee.  *See* Plaintiff's Memorandum of Law In Support Of Her Motion In Limine To Substantially Limit Opinon Testimony of Robert Miller, P.E., ECF No. 41 at 9-10.  It follows that the animations cannot possibly form the basis of an admissible expert opinion, even if Galbreath were an expert or had applied any expertise at all.  Defendants utterly lack the ability to show any proper basis for Galbreath's opinions, which further warrants precluding him from testifying.

# THE ANIMATIONS THEMSELVES ARE INADMISSIBLE
# AND THEIR USE AS EXHIBITS WOULD BE IMPROPER

### A. Miller's Crude Animations Are So Different From The Events They Purport To Depict That They Should Be Excluded From Evidence.

Evidence that does not tend to make the truth of any fact at issue more or less likely than it would be in the absence of such evidence is irrelevant. Fed. R. Evid. 401. Irrelevant evidence is inadmissible. Fed. R. Evid. 402. It follows that, evidence "purporting to replicate an accident requires a foundational showing of a substantial similarity between the test results being offered into evidence and the circumstances of the accident at issue in the litigation." *Cordero v. Stop and Shop Supermarket Co.*, No. 11 Civ. 5701 (BSJ), 2012 WL 5951280, *1 (S.D.N.Y. 2012) (citing *Guild v. Gen. Motors Corp.*, 53 F.Supp.2d 363, 366 (W.D.N.Y. 1999)) (internal quotation marks omitted); *see also Barnes v. General Motors Corp.*, 547 F.2d 275, 277 (5th Cir. 1977) (requirement of substantial similarity between re-creation and occurrence); *Lobel v. American Airlines*, 205 F.2d 927, 931 (2d. Cir. 1953) (trial court's discretion to admit evidence of an experiment supposedly recreating an accident depended on the similarity of experimental conditions to those of the accident itself). Evidence that re-creates an accident must possess a high degree of similarity to the actual event. *See Datskow v. Teledyne Continental Motors Aircraft Products, a Div. of Teledyne Industries, Inc.*, 826 F. Supp 677, 686 (W.D.N.Y. 1993). Furthermore, while an expert may base his opinions on inadmissible facts or data, the party offering his testimony may not disclose them to the jury unless their helpfulness to the jury in understanding his testimony substantially outweighs their prejudicial effect. Fed. R. Evid. 703. In automobile accident cases, the language of Rule 703 "[does] not warrant admitting into evidence the opinion of an "accidentologist" as to the point of impact in an automobile collision based on statements of bystanders." Advisory Committee's Note, Fed. R. Evid. 703.

In this case, the animations produced by Miller are crudely rendered approximations, each of which is based solely on the testimony of the witness it purports to depict. Objects and people pop in and out of view (and, seemingly, of existence) without any explanation as to where they came from or went. Buildings and other landmarks at the scene of the accident appear as unshaded boxes at the periphery of the image. Moreover, their content simply does not accurately reflect the testimony they supposedly depict. Accordingly, they do not posess a high degree of similarity, or even substantial similarity, to the events of the accident giving rise to this litigation. It follows that Miller's animations make no fact at issue more or less likely, and accordingly are irrelevant. Since the animations are irrelevant, their probative value cannot possibly outweigh the danger of prejudice they pose, *see* infra, and the defendants cannot be allowed to disclose them to the jury at any point during the trial. The defendants should therefore be precluded from offering Miller's animations into evidence.

> **B. As Re-Enactments Of Deposition Testimony, The Animations Would Not Aid The Jury In Understanding The Testimony Of Any Expert Witness, And Their Use As Demonstrative Exhibits Would Be Improper.**

Fed. R. Evid. 611(a)(1) requires the trial court to exercise reasonable control over the mode and order of examining witnesses so as to make those procedures effective for determining the truth. Although demonstrative aids can be used at trial to help illustrate an expert witness's testimony on technical aspects of a particular case, they must be helpful to the jury in understanding that expert's testimony, and they must not pose a risk of unfair prejudice that outweighs their probative value. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 535 F.Supp.2d 580, 585 (E.D. VA 2008). The probative value of a demonstrative aid "is measured by the degree to which the judge thinks that the item will assist the trier of fact in understanding the witness's testimony." 2 *McCormick on Evidence § 214* (6th ed. 2006).

Here, Miller's animations are not based on his understanding of what happened during the accident. They merely purport to illustrate the testimony of witnesses who will be called to the stand during the trial. *See* Miller Report, Exhibit "6" to Napoli Declaration at 18. As a matter of course, then, the animations will not be useful to the jury at all in understanding his testimony, should the Court permit him to testify. Similarly, even if Galbreath is not precluded from testifying, the animations will be of no use to the jury in understanding his testimony. Since Miller's animations are unhelpful to the jury, it follows that they have no probative value. On the other hand, the prejudicial effect of allowing Miller's animations to be used as demonstrative exhibits would be considerable: the jury could be misled into thinking that those animations depict the accident as it actually happened, and make its decision on that basis, which would be palpably improper. Such being the case, their prejudicial effect clearly outweighs their probative value; therefore, the animations are improper exhibits. Accordingly, the defendants should be precluded from using Miller's animations to illustrate the testimony of either defense expert, or any other witness.

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion should be granted, and Defendants should be precluded from offering Galbreath's opinion testimony at trial, offering Miller's animations in evidence or as demonstrative exhibits, together with such other and further relief as this Court deems fair, just and equitable, given the circumstances under which this motion is made.

Dated: New York, New York
September 11, 2013

Respectfully submitted,

NAPOLI BERN RIPKA SHKOLNIK, LLP
*Attorneys for the Plaintiff*

By: _____
Joseph P. Napoli (JN9195)

350 Fifth Avenue, Suite 7413
New York, New York 10118
(212) 267-3700