UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
File No. 3371-1

FELICITA MELENDEZ,

    Plaintiff(s),

-against-

GERARDO RODRIGUEZ, VOLPE DEDICATED, INC. and RITE AID HEADQUARTERS CORP.,

    Defendant(s).

CIVIL ACTION NO. 12-CV-8846 (SMK)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RITE AID HEADQUARTERS CORP.'S MOTION *IN LIMINE* TO PRECLUDE

DURKIN & DURKIN, LLP
80 Broad Street
Fifth Floor
New York, New York 10004
(212) 349-8173
Attorneys for Defendants
Volpe Dedicated, Inc. and Gerardo Rodriguez

On the Brief:
Stephen M. Knudsen, Esq.

## COMBINED STATEMENT OF PROCEDURAL HISTORY AND MATERIAL FACTS

Defendants **VOLPE DEDICATED, INC.** (hereinafter "**VOLPE**") and **GERARDO RODRIGUEZ** (hereinafter "**RODRIGUEZ**") (Collectively "**THE VOLPE DEFENDANTS**") submits this brief in support of Defendant Rite Aid Headquarters Corp.'s (hereinafter "Rite Aide") motion *in limine* to preclude.

Plaintiff Felicita Melendez (hereinafter referred to as "Plaintiff") claims to have sustained injuries in the early morning on October 24, 2012 after being struck by a **VOLPE** truck that **RODRIGUEZ** was driving while Plaintiff was walking through the north cross walk at the

intersection of White Plains Road and Story Avenue in the Bronx headed towards a bus stop on the northeast side of White Plains Road north of that cross walk.

On March 8, 2013, **THE VOLPE DEFENDANTS** filed a response to the Plaintiff's Request for the Production of Documents which included, *inter alia*, the personnel file and relevant training materials for **RODRIGUEZ**. Page nineteen (19) of the personnel file includes a "Motor Vehicle Record" for **RODRIGUEZ** which indicates the following accident/violation: "10/26/2011 UNSAFE OPERATION OF A MOTOR VEHICLE- NJ". Page twenty (21) of the personnel file contains correspondence from **VOLPE'S** safety director, Chris Prince, which discusses the aforementioned violation. Page thirty (37) of the personnel file contains a "Certification of Violations/Annual Review of Driving Record" for **RODRIGUEZ**, dated March 23, 2012, which references the October 26, 2011 violation. Page forty (40) of the personnel file contains a "Motor Vehicle Record" which references the October 26, 2011 traffic violation and a February 10, 2012 accident. Page forty-one (41) of the personnel file includes correspondence from **RODRIGUEZ** to Mr. Prince which discusses the February 10, 2012 accident..

On August 5, 2013 Plaintiff provided Supplemental Rule 26(a)(2)(A) Disclosures of Expert Testimony as to Damages from Jeffrey Perry, D.O. Dr. Perry states that the Plaintiff may require further surgical intervention for the right lower extremity which may include amputation at right above the knee for consideration of bilateral lower extremity prosthetics.

On August 26, 2013, Dr. Perry was deposed. A copy of the transcript of Dr. Perry is attached to the Dempsey Certification as Exhibit "K". At his deposition, Dr. Perry conceded that from the time of his original report on January 15, 2013 and his supplemental report on August 5, 2013, he did not review any additional treatment records from the plaintiff or any records in conjunction with his re-examination and that the only notable difference observed was that the Plaintiff was no longer wearing an external fixator. Perry deposition p. 18-21. Moreover, Dr. Perry came to his conclusion that the Plaintiff may require a right, above-the-knee amputation in the future because the Plaintiff wanted to walk again and due to the limited range of motion in the right knee, her right leg may be more

2

functional with a prosthetic. Notably, Dr. Perry readily admitted that he was not sure if an alternative method, whether medically or surgically, was available; that a right knee replacement might be possible and that he was not sure if a knee replacement would provide the Plaintiff with a better opportunity to walk. Moreover, Dr. Perry testified to the negative medical ramifications of amputating a limb; that his recommendation was based solely upon function, despite being unaware of the alternative medical or surgical options available; and that a team of doctors would be required to make a determination concerning amputation. Perry deposition p. 22-29.

# ARGUMENT

## POINT I

### RODRIGUEZ'S DRIVING HISTORY IS INADMISSIBLE BECAUSE IT IS IRRELEVANT, UNFAIRLY PREJUDICIAL AND WOULD MISLEAD THE JURY

Pursuant to Federal Rule of Evidence ("FRE") 401 evidence is deemed relevant if it has a tendency to make a fact more or less probable, than it would be without the evidence; and the fact is of consequence in determine the action. However, FRE 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Additionally, FRE 404(b) prohibits the use of evidence of a "crime, wrong, or other act…to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Accordingly, in civil actions for personal injuries sustained in a car accident, Plaintiffs have been precluded from introducing summaries of the Defendant's past and prior driving records under Rule 404(b). Crawford v. Yellow Cab Co., 572 F. Supp. 1205, 1210 (N.D. Ill. 1983).

More specifically, in a recent unreported decision, attached hereto, the Second Circuit provided "[e]vidence of prior accidents may be admitted at trial only if the proponent 'establishe[es] their relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue.'" Lidle v. Cirrus Design Corp., 505 Fed. Appx. 72, 74 (2d Cir. N.Y. 2012)(citing Schmelzer v. Hilton Hotels Corp., No. 05 Civ. 10307, 2007 U.S. Dist. LEXIS 70727, at *5 (S.D.N.Y. Sept. 24, 2007)). Additionally, whether a prior accident occurred under "substantially similar" conditions is largely dependent upon the "underlying theory of the case". Id. (citing Guild v. Gen. Motors Corp., 53 F. Supp. 2d. 363, 367 (W.D.N.Y. 1999). Plaintiff's reliance on Quiroz v. Zottola 96 Ad3d 1035 (2nd Dept 2012) is misplaced as there simply no evidence that **VOLPE** had no knowledge of **RODRIGUEZ** driving anything but responsibly prior to this incident and that they thoroughly vetted any prior violations.

In this instance, the Plaintiff has stated in her responding papers that **RODRIGUEZ'S** driver history is admissible to show **VOLPE'S** alleged negligence in hiring and retaining him. As an initial matter, the two incidents at issue stem from an October 26, 2011 traffic violation, wherein **RODRIGUEZ** operated a commercial vehicle in a residential neighborhood (see Declaration of Joseph P. Napoli in Opposition to Defendant Rite Aid Headquarters Corp.'s Motion in Limine to Preclude ("Napoli Declaration") at §3), and a February 11, 2012 accident, which was due to no fault of **RODRIGUEZ**. See Napoli Declaration at §5. As such, the October 26, 2011 traffic violation is not indica that **RODRIGUEZ** is an unsafe driver and the February 11, 2012 incident does not indicate that **RODRIGUEZ** was at fault. Accordingly, if these pre-complaint incidents were deemed admissible they would have not support the Plaintiff's allegations of negligent hiring. Moreover, since these incidents do not support the Plaintiff's arguments and would instead cast unwarranted negative light on **RODRIGUEZ**, any probative value would be "substantially outweighed by the danger of unfair prejudice" and would act to "mislead[] the jury" as expressly prohibited by FRE 403.

Similarly, the proffered evidence is irrelevant. **RODRIGUEZ'S** October 26, 2011 and February 11, 2012 incidents, as previously stated, do not make any fact more or less probable as required by FRE 401. Additionally, pursuant to FRE 404(b) these prior incidents are not admissible to prove **RODRIGUEZ'S** character in order to show action in conformity therewith. Therefore, these incidents would have no effect other than to prejudice the **VOLPE DEFENDANTS** and to mislead the jury.

## POINT II

## EVIDENCE CONCERNING VOLPE'S POST ACCIDENT INVESTIGATION AND AWARDS PROGRAM IS INADMISSIBLE

FRE 407 provides that subsequent remedial measures such as "when measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measure is not admissible to prove: negligence [or] culpable conduct..." FRE 407 is "essentially in accord with New York Law". See. 2-5 Bender's New York Evidence § 5.17[4][g]. That is subsequent remedial measures "have no legitimate bearing upon either the defendant's negligence or knowledge of conditions...[Their] natural tendency is to prejudice and influence the minds of the jury against [the defendant]." Fraumberg v. Schmohl, 190 NYS 710, 711 (App. Term, 1st Dept. 1921).

As a result, both New York Law and the Federal Rules make clear that any testimony and evidence concerning **VOLPE'S** post-accident investigation must be precluded as a subsequent remedial measure. In the Plaintiff's opposing papers, the Plaintiff makes bald assertions that **RODRIGUEZ** made a false statement because he allegedly spoke to superiors before speaking with police officers and providing a written account and that he used the word "jaywalking" and that as a native of Puerto Rico with limited English proficiency he would have not known what this term on his own. Plaintiff then offers that **RODRIGUEZ** used the word "we" when referring to the origin of the accident. Plaintiff suggest to the Court that this, along with Mr. Buskirk's testimony, give rise to an inference that the **VOLPE DEFENDANTS** concealed important facts and, therefore, blameworthy and morally deficient. However, the Plaintiff's allegations are unsubstantiated and largely insufficient to compel this Court to vitiate the long standing Federal and State safeguards that prevent the admission of subsequent remedial measures.

All the cases that counsel for plaintiff cites involve active wrongs by parties after an incident and there is no evidence of such wrongs in this case. There is no evidence **RODRIGUEZ** or **VOLPE** concealed evidence, or made inconsistent statements, or misstatements or engaged in active fraud. Rather, the evidence shows that **RODRIGUEZ** presented himself to the police after this incident and

stayed at the scene until he was told he could go. His statement that plaintiff was jaywalking was based on conversations he overheard among police officers. Likewise, **VOLPE** made no attempt to influence any investigation or **RODRIGUEZ'** statement after the investigation. Rather, **VOLPE** told **RODRIGUEZ** to speak to the police at the scene. If a Plaintiff is permitted to circumvent these State laws and Federal Rules on only the basis of bald assertions, then it would render said laws and rules largely meaningless and illusory.

Similarly, the post-accident awards banquet and **RODRIGUEZ'S** safe driving award must be precluded. The post-accident award has no bearing on any liability issues before this Court. Plaintiff made no effort to uncover the **VOLPE** standard for a safe driver award and presents no evidence of that standard even on this motion. It is further clear from the Plaintiff's moving papers that any such evidence would be offered for the sole purpose of prejudicing, confusing, misleading and inflaming the jury as expressly prohibited by FRE 403. Accordingly, the Plaintiff should be precluded from introducing post-accident evidence that has no bearing on liability and would merely prejudice the jury.

## POINT III

### DR. JEFREY PERRY'S OPINION CONCERNING FUTURE SURGICAL INTERVENTION SHOULD BE PRECLUDED

FRE 702 acts as a guideline for the admissibility of expert testimony and provides that:

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine the fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the produce of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the fact of the case."

Additionally, FRE 104(a) vests trial Courts with a "gatekeeping role" to ensure that the expert testimony is both reliable and relevant. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 590-91 (1993). Furthermore, the proponent of the expert testimony must establish admissibility by a preponderance of the evidence and the offered expert testimony must assist the trier of fact in understanding the evidence or to determine a fact in issue. Id. At 593, n. 10, and 591.

The Daubert Court established several factors, including "testing, peer review, error rates and 'acceptability' in the relevant scientific community," which the trial courts may consider in determining reliability. Kuhmo Tire co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999). The Daubert Court further noted that this list is not exhaustive and may not be applicable to all experts and in every case. Id. However, an "expert's opinion must be supported by more than subjective belief and unsupported speculation and should be supported by 'good grounds,' based on what is known." McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 801 (6th Cir. 2000). Additionally, district courts are not required "to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997). As such, the Second Circuit has held that "when an expert opinion is based no data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of

the unreliable opinion testimony." Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005)(citing Amorgianos v. National R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002).

Dr. Perry's supplemental Rule 26 disclosures indicate that Dr. Perry states that Plaintiff "requires further surgical intervention for the right lower extremity which may include a right above knee amputation under controlled conditions for consideration of bilateral lower extremity prosthetics." As an initial matter, Dr. Perry's statements are speculative and far from certainty. This is confirmed from his deposition, following his supplemental disclosures, wherein he states that he did not review any additional treatment record from when he first examined the Plaintiff, that he was unsure if there were alternative methods available and that his opinion was based solely on function and that he would still need a team of doctors to confirm his recommendations.

As such, there is no question that Dr. Perry's testimony is unreliable since Dr. Perry himself is unsure of alternative options and is not confident in his recommendations, absent a confirmation from a team of physicians. Furthermore, Dr. Perry's uncertainty confirms that his recommendations are not based on "good grounds" based on what is known. As such, Dr. Perry's testimony would only act to prejudice the jury. Therefore, Dr. Perry's testimony should be precluded.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the Court grant Defendant Rite Aid Headquarters Corp.'s motion to preclude.

DATED: September 24, 2013
New York, New York

DURKIN & DURKIN, LLP
Attorneys for Defendants VOLPE and RODRIGUEZ

By: Stephen M. Knudsen (SK 0539)
80 Broad Street
Fifth Floor
New York, New York 10004
(212) 349-8173

TO: Napoli Bern Ripka Shkolnik, LLP
Attorney for Plaintiff
Attn: Joseph Napoli, Esq.
350 5th Avenue, Suite 7413
New York, New York 10118

Raven & Kolbe, LLP
Attorney for RITE AID
Att.: Keith A. Raven, Esq.
126 East 56th Street, Suite 202
New York, New York 10022